# Exhibit 1

UNITED STATES DISTRICT COURT

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ~~LYNN GAMBRILL~~ , on behalf of herself and all others similarly situated, <br><br> ———Plaintiff, <br><br> ———v. <br><br> CS DISCO, INC; KIWI CAMARA; MICHAEL LAFAIR; <br><br> ————————Defendants. | Case No. <br><br> CLASS ACTION <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> DEMAND FOR JURY TRIAL |

Plaintiff ~~Lynn Gambrill ("Gambrill" or "~~ ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes, among other things: (a) review and analysis of regulatory filings made by CS Disco, Inc. ("CS Disco" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning CS Disco; and (d) other public information concerning CS Disco.

**INTRODUCTION**

1.      This is a securities class action on behalf of persons and entities that purchased shares of CS Disco's common stock between July 21, 2021, and August 11, 2022, inclusive (the "Class Period").

2.      The claims asserted herein are alleged against CS Disco and certain of the Company's officers under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

1

3. CS Disco asserts that it provides cloud-based, artificial intelligence-powered technologies to simplify electronic discovery, legal document review, legal hold and case management for enterprises, law firms, legal services providers, and governments. CS Disco's principal revenue-generating segment was its electronic document review platform.

4. Beginning with its July 2021 initial public offering ("IPO") and throughout the Class Period, CS Disco repeatedly touted strong growth in its revenues attributable to customer usage of its cloud-based electronic discovery platform and asserted that it had good advance visibility into changes in the demand from individual customers over time.

5. While the Company also acknowledged that its rapid revenue growth was "usage driven" and may be subject to volatility, it did not inform investors during the Class Period that it had any indication of significant headwinds to its growth.

6. The truth began to emerge on August 11, 2022, when CS Disco released financial results for the second quarter of 2022 that shocked investors and analysts alike. Not only did the Company's revenue growth taper drastically over past quarters, but the Company alerted the markets that it would no longer be including in its guidance any revenues attributable to its largest customers *for the entire year*. Nevertheless, during an investors call following the earnings release the Company's Chief Executive Officer ("CEO") denied that its declines in revenue were the result of losing any major customers.

7. In fact, CS Disco had abruptly decided to factor out its large customers from its full-year revenue guidance for a simple reason: it had known for months that it was losing their business, CS Disco had never disclosed this information to its investors.

8. As a result of these disclosures, the price of CS Disco stock declined $15.53 between August 11, 2022 and August 12, 2022, a drop of more than 53 percent.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and putative class members have suffered significant losses and damages. Plaintiff and putative class members seek damages for redress, reasonable attorneys' fees, injunctive relief, and all other relief this Court deems just and proper.

**JURISDICTION AND VENUE**

10.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § § 240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.    Venue is proper in this District under Section 27 of the Exchange Act (15 U.S.C. § § 78aa), and 28 U.S.C. § 1391(b), (c), and (d). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Moreover, on May 16, 2022, CS Disco opened a new office in Manhattan in order to, among other things, "provide[] proximity to . . . an investor community that increasingly engages DISCO to explore new ways technology can deliver better legal outcomes." In addition, at all relevant times the Company's common stock was offered, sold, and traded under the ticker "LAW" on the New York Stock Exchange ("NYSE"), which is located in this District. Defendants conducted an IPO and an SPO (as defined below) in this District, disseminated the statements alleged to be false and misleading into this District, and solicited purchasers of the Company's shares in this District.

10.12. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

A.    **Plaintiff**

Plaintiff Lynn Gambrill is a resident of Austin, Texas.

11.13.    As indicated in the certification submitted herewith, Plaintiff purchased shares of CS Disco common stock traceable to the Company's IPO at artificially inflated prices during the Class Period, and suffered damages as a result of the violations of the federal securities laws alleged herein.

**B.      Corporate Defendant**

~~12.~~14.  Defendant CS Disco asserts that it provides cloud-native and artificial intelligence-powered legal solutions for electronic discovery ("ediscovery"), legal document review, and case management for enterprises, law firms, legal services providers, and governments.

~~13.~~15.  Incorporated in Delaware, the Company maintains its corporate headquarters in Austin, Texas, with its only other U.S. office in Manhattan, New York City. CS Disco's common stock trades on NYSE under ticker symbol "LAW." As of February 20, 2023, CS Disco had over 59 million shares of common stock outstanding, owned by hundreds or thousands of investors.

**C.      Officer Defendants**

~~14.~~16.  Defendant Kiwi Camara ("Camara") was at all relevant times, CS Disco's CEO. Defendant Camara signed quarterly and annual financial reports for the Company during the Class Period, including the Registration Statements for the IPO and SPO.  On September 11, 2023 the Company disclosed in a form 8-K filed with the SEC that Camara had resigned from the Company.

~~15.~~17.  Defendant Michael Lafair ("Lafair") is, and was at all relevant times, CS Disco's Executive Vice President and Chief Financial Officer ("CFO"). Defendant Lafair signed the Company's quarterly and annual financial statements during the Class Period, including the Registration Statements for the IPO and SPO.

~~16.~~18.  Defendants Camara and Lafair are referred to herein as the "Officer Defendants."

**<u>BACKGROUND</u>**

~~17.~~19.  CS Disco states that it offers technology that automates ediscovery process and saves legal departments from manual tasks associated with collecting, processing, enriching, searching, reviewing, analyzing, producing, and using enterprise data that is at issue in legal matters. It also provides DISCO Review, an AI-powered document review solution.

~~18.~~20.  The Company was founded in 2013 by Defendant Camara to provide technology-driven legal services, and was headquartered in Austin, Texas. Just weeks after its IPO closed, on September 13, 2021 the Company made an SPO of shares to permit corporate insiders including Camara to offload millions of dollars in holdings to the public.

19.21. On May 16, 2022 the Company opened a second U.S. office at 335 Madison Avenue in Manhattan, and announced that "DISCO's New York office provides proximity to leading global law firms, international corporations, and an investor community that increasingly engages DISCO to explore new ways technology can deliver better legal outcomes," and added that "[a]s we continue to scale to meet growing global customer demand, it is important to meet our customers where they are. And our customers are in New York City!"

20.22. On July 21, 2021, the Company completed an initial public offering ("IPO") of its common stock pursuant to a Registration Statement on Form S-1. In the IPO, the Company sold an aggregate of 7,500,000 shares of common stock, including 500,000 shares issued pursuant to the underwriters' option to purchase additional shares at a public offering price of $32.00 per share.

21.23. On September 17, 2021, the Company completed a secondary public offering ("SPO") of its common stock pursuant to a Registration Statement on Form S-1. In the SPO, selling stockholders sold an aggregate of 6,050,000 shares of common stock, including 550,000 shares sold pursuant to the underwriters' option to purchase additional shares at an offering price of $53.00 per share.

22.24. Beginning with the Company's IPO and up until it reported its financial results for the first quarter of 2022, CS Disco frequently touted its rapid revenue growth. This rapid growth was key to the Company's prospects in the mind of many investors. As summarized by investor resource Seeking Alpha in March of 2022, the Company's "growth story of Disco is very much intact . . . revenues are still growing strongly, fueled by both new customer acquisitions *and by increased spending of existing ones*."

23.25. In fact, Defendants were aware of, or recklessly disregarded, the fact that the handful of customers that drove this explosive growth had already decided to end their projects with the Company by end of 2021, and CS Disco had excellent advance visibility into this shakeup in its business. It would be many months before this would be disclosed to investors.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING
STATEMENTS CAUSED SUBSTANTIAL LOSSES TO INVESTORS**

24.26.  The Class Period begins on July 2021, when the Company filed a form 424B4 in connection with its IPO that stated, among other things, that the Company's "revenue growth depends in part on the success of our strategic relationships with law firms and other legal services providers," but did not disclose to investors any information regarding its knowledge of loss of business from its principal customers. This form was signed by, among others, Defendants Camara and Lafair.

25.27.  In a Form 10-Q financial report for the period ending June 30, 2021 filed on September 3, 2021, the Company stated that it had been experiencing "rapid growth" and noted that its "go-to-market strategy is focused on acquiring new customers and driving continued use and increased usage of our solution for existing customers." However, the Company did not disclose that it was aware that it was losing business from the key customers that had driven its past rapid revenue growth.

26.28.  In a Form S-1 the Company filed on September 13, 2021, CS Disco again referred to its recent rapid growth, and its "focus[] on acquiring new customers and driving continued use and increased usage of our solution for existing customers." Once again, the Company failed to inform investors that it already knew that the customers responsible for its rapid increase in revenue were in the midst of drawing down their business. Defendants Camara and Lafair, among others, signed this document.

27.29.  In a Form 10-Q for the quarter ending September 30, 2021 filed on November 10, 2021, the Company repeated that it had experienced "rapid growth in recent periods," and again attributed its success to its "focus[]on acquiring new customers and driving continued use and increased usage of our solution for existing customers." However, the Company again did not alert investors to what it already knew—that the customers that were the primary drivers of this growth were dramatically drawing down their business. Defendants Camara and Lafair signed this report.

30.    On February 25, 2022, the Company filed its Form 10-K for fiscal year ended December 31, 2021, reasserting that in recent periods it had experienced "rapid growth" and that

6

it "focused on acquiring new customers and driving continued use and increased usage of our solution for existing customers." It did not warn investors that it already knew that the business that supported this growth had by this time already ended. This form was signed by Defendants Camara and Lafair.

28.31. On May 13, 2022, the Company filed its Form 10-Q for the quarter ending March 31, 2022. Although it no longer boasted of recent rapid growth, it continued to assert that "[o]ur go-to-market strategy is focused on acquiring new customers and driving continued use and increased usage of our solution for existing customers" without explaining that it had already suffered a massive loss of business from its top customers. Defendants Camara and Lafair signed this document.

**THE TRUTH EMERGES**

29.32. On August 11, 2022, the Company disclosed to investors that its explosive growth was in fact attributable to just a handful of large customers. Moreover, in warning investors that it would no longer be including revenues from these customers in its guidance, it also effectively disclosed that the business from these customers would not be returning.

30.33. On that date the Company issued its disappointing financial results for the second quarter of 2022, noting that revenue growth was now just a fraction of what the Company had seen in the previous year, and also announcing that it would be "de-risking" its full year guidance by no longer including, with almost no explanation, the revenues that had driven its growth in the past.

34. As a Seeking Alpha analysis put it: "After the soft Q2 quarter, Disco has cut its full year 2022 revenue guidance from ~$151 million to ~$134 million, which would represent 'only' 17% YoY growth for 2022. This would mean a huge deceleration from the 67% YoY growth in 2021. It seems that all of a sudden, the short- and medium-term growth path for the company turned upside down." Even more concerning to this analyst was the fact that the Company had abruptly made the assumption that the remaining quarters in the year would be equally stagnant: "[u]nfortunately, we don't know whether this volatility in the Review business was simply due to

7

the 'bad' timing of large lawsuits, some temporary weakness related to the current macroeconomic slowdown or a structural change in the business."

~~31.~~35.  Many other analysts expressed surprise and consternation at the Company's abrupt change in messaging to investors. Analysts at Canaccord wrote "[t]he surprise, we suppose, and why we're somewhat scratching our heads, is that the company is now extrapolating forward ('de-risking' in its own words) its Q2 performance despite indicating the swing in revenue is normal and as expected." Cowen analysts were just as bemused, writing that "it was unclear what caused such a change in consumption from these large $1m+ customers," and that "LAW is much more dependent on large customer consumption behavior than we had thought[.]".

~~32.~~36. As a result of these disclosures, the price of CS Disco stock declined $15.53 between August 11, 2022 and August 12, 2022, a drop of more than 53 percent.

## LOSS CAUSATION

~~33.~~37.  During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of CS Disco shares and operated as a fraud or deceit on the class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of CS Disco shares fell precipitously as the prior artificial inflation came out of the price over time. As a result of their purchases of CS Disco shares during the Class Period, Plaintiff and other members of the class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

~~34.~~38.  Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired shares of CS Disco common stock.

~~35.~~39.  Excluded from the class are Defendants and their families, directors, and officers of CS Disco and their families and affiliates.

36.40. The members of the class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of February 20, 2023, CS Disco had over 59 million shares of common stock outstanding, owned by hundreds or thousands of investors.

37.41. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the class which predominate over questions which may affect individual class members include:

(a)      Whether Defendants violated the Exchange Act;

(b)      Whether Defendants omitted and/or misrepresented material facts;

(c)      Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)      Whether Defendants Camara and Lafair are personally liable for the alleged misrepresentations and omissions described herein;

(e)      Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)      Whether Defendants' conduct impacted the price of CS Disco common stock;

stock;

(g)      Whether Defendants' conduct caused the members of the class to sustain damages; and

damages; and

(h)      The extent of damage sustained by class members and the appropriate measure of damages.

38.42. Plaintiff's claims are typical of those of the class because Plaintiff and the class sustained damages from Defendants' wrongful conduct.

39.43. Plaintiff will adequately protect the interests of the class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those

9

of the class.

40.44.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

41.45.  CS Disco's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

42.46.  Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of CS Disco who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

43.47.  At all relevant times, the market for CS Disco shares was an efficient market for the following reasons, among others:

(a)    CS Disco shares met the requirements for listing, and was listed and actively traded on NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, CS Disco filed periodic public reports with the SEC and NYSE;

and NYSE;

(c)    CS Disco regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(c)(d)  CS Disco was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.48.  As a result of the foregoing, the market for CS Disco shares promptly digested current information regarding CS Disco from all publicly available sources and reflected such information in the price of the Company's common stock. Under these circumstances, all purchasers of CS Disco common stock during the Class Period suffered similar injury through their purchase of CS Disco common stock at artificially inflated prices and the presumption of reliance applies.

45.49.  A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding CS Disco's business operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of pricing visibility and effective sales practices for the Company's margins and profitability, that requirement is satisfied here.

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against CS Disco and the Officer Defendants

46.50.  Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

51.    During the Class Period, CS Disco and the Officer Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did:- (a)- deceive the investing public, including Plaintiff and other class members, as alleged herein;-

12    12

and (b) cause Plaintiff and other members of the class to purchase CS Disco shares at artificially inflated prices.

47.52.  CS Disco and the Officer Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to maintain artificially high market prices for CS Disco shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

48.53.  CS Disco and the Officer Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

49.54.  During the Class Period, CS Disco and the Officer Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.55.  CS Disco and the Officer Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. CS Disco and the Officer Defendants engaged in this misconduct to conceal CS Disco's true condition from the investing public and to support the artificially inflated prices of the Company's shares.

51.56.  Plaintiff and the class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for CS Disco shares. Plaintiff and the class would not have purchased the Company's shares at the prices they paid, or at all, had they been aware that the market prices for CS Disco shares had been artificially inflated by these Defendants' fraudulent course of conduct.

52.57.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the class suffered damages in connection with their respective purchases of the Company's shares during the Class Period.

53.58.  By virtue of the foregoing, CS Disco and the Officer Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Officer Defendants

54.59.  Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

55.60.  The Officer Defendants acted as controlling persons of CS Disco within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about CS Disco, the Officer Defendants had the power and ability to control the actions of CS Disco and its employees. By reason of such conduct, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

(a)  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)  Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

14

(d)    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Lead Plaintiff hereby demand trial by jury of all issues that may be so tried.

Dated: September 19, 2023                                Respectfully submitted,

BERMAN TABACCO

                                              By:   /s/ Michael Dark
                                                    Michael Dark

                                              425 California Street, Suite 2300
                                              San Francisco, CA 94104
                                              Telephone: (415) 433-3200
                                              Facsimile: (415) 433-6382
                                              Email: mdark@bermantabacco.com

                                              Patrick T. Egan
                                              BERMAN TABACCO
                                              One Liberty Square
                                              Boston, MA 02109
                                              Telephone: (617) 542-8300
                                              Email: pegan@bermantabacco.com

                                              *Counsel for Plaintiff Lynn Gambrill*

15