**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LYNN GAMBRILL, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. AU:24-CV-00028-DAE |
| CS DISCO, INC., KIWI CAMARA, and MICHAEL LAFAIR, | § § § § | |
| *Defendants*. | § | |

**DEFENDANTS' MOTION FOR RECONSIDERATION**
**AS TO COURT'S RULINGS ON SCIENTER AND FALSITY**
**(ORAL ARGUMENT REQUESTED)**

## I.    Introduction and Summary

This Court correctly dismissed most of Plaintiff's claims in its January 30, 2025 Order, holding that "the only plausible securities fraud claim" rests on statements Defendant Kiwi Camara made to investors in September 2021 and January 2022. *See* ECF No. 69 ("Order") at 35. As to these surviving claims, the Court held that (1) the Amended Complaint adequately pled that those statements, although not false, were misleading by omission, and (2) the Amended Complaint alleged sufficient facts to support an inference that Camara acted with the requisite scienter–that is, that Camara intended to defraud investors or acted with "severe recklessness" as to the truth of those statements when he made them. *Id*. at 36. ***Unfortunately, this critical holding rests on a chronological error.***

In holding that Plaintiff adequately alleged scienter as to Camara's September 2021 and January 2022 statements, the Court relied on the allegation that an unnamed employee told Camara during a monthly call that "large Review matters would dry up beginning in March of 2022." Order at 37. However, that alleged call happened in February 2022, ***after*** Camara's

statements on which the Plaintiff's entire case now rests.  Logically, and as a matter of law, information that a speaker learns *after* making a statement cannot support an inference that the speaker acted with fraudulent intent *at the time the statement was made*.

When the unnamed employee's alleged February 2022 statement to Camara is disregarded, as it must be, Plaintiff's Amended Complaint is left with no well-pleaded facts supporting an inference of scienter, let alone facts supporting an inference *stronger* than the competing inference of non-fraudulent intent, which is required to state a securities fraud claim.  The inadequacy of Plaintiff's scienter allegations is confirmed by the undisputed fact that *after* Camara's September 2021 and January 2022 statements, DISCO met revenue projections for the next two quarters of 2022 and raised its full-year projections—this is inconsistent with any earlier belief that DISCO's revenue was about to dry up.  Disregarding the unnamed employee's alleged statement, as it must, the Court should hold that Plaintiff has failed to plead particularized facts supporting a strong inference of scienter and dismiss the entire case.

In addition, Defendants urge the Court to reconsider its holding that Plaintiff adequately pled falsity.  Read in their broader context, Camara's September 2021 and January 2022 comments did not state that DISCO's revenue growth was attributable to "gradual adoption" and "steady" growth from mature customers, with no threat of volatility due to the uncertain nature of litigation.  *See* Order at 19, 21.  Rather, while describing DISCO's history as to certain customers, Camara (and the company's other public statements) repeatedly cautioned investors that DISCO's performance depended on large litigation customers whose business could fluctuate with the customers' litigation experiences.

**II.      The Court Correctly Dismissed the Vast Majority of Plaintiff's Amended Complaint**

On January 30, 2025, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's Amended Complaint. ECF No. 54 ("Mot."); Order. The Court correctly dismissed nine of thirteen challenged statements and narrowed the class period by over a year. However, the Court denied Defendants' motion as to two statements Camara made on September 2, 2021, and two made on January 11, 2022, about general customer spending, usage, and maturity.[1] Order at 19–21.

The Court interpreted these statements as suggesting that "customer spending was driven by gradual adoption across a wide range of matters—with the result being a steady mature spend by customers" and "fluctuations in specific customer usage would washout in the aggregate." Order at 20–21. On that basis, the Court held that Plaintiff adequately pled Camara's statements misled investors by omitting that "Disco's real revenue drivers were in fact only a handful of large Review projects" and that "customer spending was actually spiky and driven by only a few large Review projects." *Id*.

The Court also held that the Amended Complaint alleged facts supporting a conclusion that Camara made his four statements with scienter, citing four allegations that Camara (1) "acted with scienter," (2) tracked usage data, (3) was allegedly told by an employee in February 2022 that

---

[1] The Court also held that Plaintiff failed to plead that Defendant Michael Lafair made any false or misleading statements. Order at 21–27. While Plaintiff alleges generally that Lafair is a "controlling person" based on his role as DISCO's CFO, AC ¶¶112–16, there is no allegation that Lafair controlled Camara, the company's founder and CEO, let alone that Lafair controlled the handful of Camara's statements that survived dismissal. Plaintiff's claims against Lafair should be dismissed for this reason, as well as for the other reasons addressed herein. *See E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 946 (9th Cir. 2023) (affirming dismissal of securities fraud claims against CFO where complaint failed to allege that CFO "exercised actual power or control over" company's founder and CEO).

Review projects would "dry up," and (4) participated in insider stock sales. *Id*. at 36–38. The Court held that, assuming these allegations were true, Camara "knew exactly where DISCO's revenue came from" and "knew that the Review projects would not sustain the predictions Camara made in the statements at issue." *Id*. at 37–38.

### III.    Legal Standard

A district court may revise an interlocutory order at any time before entry of judgment to correct a manifest error of law or fact. Fed. R. Civ. P. 54(b); *see Pang v. Levitt*, 2024 WL 2108842 (W.D. Tex. April 22, 2024). The Fifth Circuit "has recognized a district court's authority to reconsider an interlocutory order for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Rivas v. Greyhound Lines, Inc.*, 2016 WL 11164796, at *4 (W.D. Tex. Jan. 11, 2016) (citing *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210 (5th Cir. 2010)) (quotations omitted).

Indeed, this Court has granted motions for reconsideration to correct errors of law or fact. *Pang*, 2024 WL 2108842, at *1 (granting motion for reconsideration of dismissal based on unbriefed theory and finding securities fraud not adequately pled under briefed theory); *Onofre v. C.R. England, Inc.*, 2017 WL 4082366, at *3 (W.D. Tex. July 24, 2017) (granting motion for reconsideration where Court's order excluding testimony was "an error of law"). It should do so here.

### IV.    The Court Has Made a Chronological Error That Warrants Reconsideration of Its Ruling on Scienter

In holding that Plaintiff adequately pled that Camara made his September 2021 and January 2022 statements with scienter, the Court relied on a "metrics call" where an unnamed employee allegedly said, "revenue from large Review matters would dry up beginning in March of 2022," and "discussed this issue with Camara after that call." Order at 37. Assuming those allegations to

be true, the Court held that "Camara knew that the Review projects would not sustain the predictions Camara made in the statements at issue." *Id*. at 37–38.

But the "metrics call" happened in February 2022, **after** Camara made the statements at issue, (AC ¶ 45),[2] so that call cannot support an inference that Camara intended to defraud investors in September 2021 and January 2022. "Scienter must exist at the time the misrepresentation allegedly occurred." *Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 468, 471 (N.D. Tex. 2018) (discussion of strategy error did not create an inference that earlier statements were made with scienter); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867–68 (5th Cir. 2003) (affirming dismissal because report did not support scienter of earlier statements).[3] Thus, this Court cannot rely on that call to support a holding that the Plaintiff adequately pled scienter—that is, that Camara "knew" Review growth was not sustainable. Order 37–38.

Tellingly, Plaintiff did not argue that the February 2022 metrics call supported an inference of scienter for Camara's September 2021 and January 2022 statements, or that Camara knew his predictions were not sustainable. ECF No. 57. ("Opp.") at 17. Rather, Plaintiff cited the call simply to show that "Camara regularly attended sales meetings where their sales pipeline was discussed in specific detail," which "put [him] on notice of the fact that sales were highly dependent on spiky review revenue." *Id*. But DISCO's public statements and Camara's statements specifically told investors that Review for "major" issues (*i.e.* large reviews) drove "acceleration in growth" in the second quarter of 2021 (AC ¶ 50), while cautioning that "the usage-based nature

---

[2] FE-2's allegations that Review revenue was declining in "Summer 2022" is also irrelevant because Summer 2022 is after the challenged statements were made. AC ¶ 40.

[3] *See also In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 785 (S.D. Tex. 2012) (dismissing claims against individual defendant for failure to plead scienter where alleged misstatements occurred in 2007, but defendant "was "not alleged to have received information … contradicting his representation until 2008"); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 376 (S.D. Tex. 2011) (report regarding loans failed to support scienter for statements made months earlier).

of our business" drives "variability in our results," and that clients "sometimes have spikes in their legal matters." Ex. 7 at 4, 11.[4] Respectfully, the Court must reevaluate the Plaintiff's scienter allegations without considering the February 2022 metrics call or any subsequent discussions.

### A. Without the February 2022 Metrics Call and Subsequent Discussions, the Amended Complaint Fails to Allege Facts Raising a Strong Inference of Scienter

Setting aside the February 2022 metrics call, Plaintiff's remaining scienter allegations amount to: (1) the conclusory claim that Camara "acted with scienter," (2) Camara's general access to usage data, and (3) Camara's stock sales. Order at 34–38. Taken individually or collectively, these remaining allegations do not support an inference of scienter.

First, Plaintiff alleged "*generally* that Defendants 'acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading,' [or] 'acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts[.].'" Order at 36–37 (emphasis added). But a plaintiff cannot simply "state that the defendants knowingly did this or recklessly did that" without providing "the specific facts upon which an inference of conscious behavior may be based." *Melder v. Morris*, 27 F.3d 1097, 1102–03 (5th Cir. 1994); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 850 (N.D. Tex. 2005) (dismissing complaint and rejecting allegations that Defendants "did not reasonably believe in their views…at the time they expressed them.").[5]

---

[4] All "Ex." citations refer to the Index of Exhibits submitted in support of Defendants' Motion to Dismiss at ECF No. 54-1.

[5] *See also Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 468 (N.D. Tex. 2018) (conclusory allegations that defendant "knew" insufficient in the absence of "particularized facts to indicate [defendant] knew [the eventual outcome] was expected."); *Rosenzweig*, 332 F.3d at 867–68 (problems described in "generalized terms" not sufficiently particular); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("mere conclusions[ ] are not entitled to the assumption of truth.").

<u>Second</u>, Plaintiff's global allegation that "Camara closely tracked customer usage [and] . . . knew exactly where Disco's revenue came from,"[6] is likewise insufficient. Order at 37. Despite the PSLRA's heightened pleading standards, Plaintiff pled no "particularized facts" about what usage or revenue data showed **at the time** Camara made his September 2021 and January 2022 statements, much less how Camara understood such information to mean about DISCO's current and future prospects. For example, Plaintiff does not allege that usage was going down in September 2021 or January 2022, nor that sales targets were being missed, nor that any other data suggested that Review growth was not sustainable. Even when a plaintiff alleges a defendant knew of contrary information, an "unsupported general claim about the existence of confidential corporate reports that reveal information contrary to reported accounts is insufficient to survive a motion to dismiss." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431–32 (5th Cir. 2002) (dismissing complaint and holding that alleged access to "financial reports that apprized them of the company's true financial status" failed to plead a strong inference of scienter). Here, Plaintiff's allegations are even weaker than those found inadequate in *Abrams* because the Amended Complaint only alleges that Camara had access to company data, not even that the company data contradicted his September 2021 and January 2022 statements.

This Court's recent decision in *In re Digital Turbine, Inc. Securities Litigation*, is instructive. Order Granting Mot. to Dismiss at 21, Case No. 1:22-cv-550-DAE (W.D. Tex. Aug. 22, 2024) (Ezra, J.) (ECF No. 72). There, the Court declined to infer scienter based on allegations

---

[6] Plaintiff also made conclusory allegations that Camara stated the Company tracks customer usage through "deep bottoms-up forecasting insights," and "telemetry that gives [the Company] insight into the legal matters going on into the platform," and "attended monthly calls where Review product revenue was discussed[.]" AC ¶¶ 86–87; Order at 37. Again, however, these insights and calls are not alleged to contradict Camara's statements—except for the February 2022 call that came **after** the remaining statements at issue.

that the defendant was "aware of the net revenue figures" without specific facts showing that he "knew these figures" were wrongly calculated "and used them anyway." *Id*. Similarly, in *Jacobowitz v. Range Resources Corp.*, Judge Mark Pittman found scienter inadequately pled where the plaintiff failed to plead particularized facts about the contents of reports the defendant allegedly received about the abandonment of oil wells. 596 F. Supp. 3d 659, 672, 686–87 (N.D. Tex. 2022). As in *Digital Turbine* and *Jacobowitz*, Plaintiff fails to plead specific facts about what usage or revenue data Camara had in September 2021 and January 2022, if any, that contradicted his public statements. Given DISCO's positive financial performance in the first three quarters of 2022, this is no surprise.

Third, the Court referenced Camara's "insider stock sales" in its holding that the Amended Complaint's allegations, as a whole, supported scienter. Order at 37. But, to support an inference of scienter, a court must consider whether insider sales were "suspicious." Order Granting Mot. to Dismiss at 27, *Digital Turbine,* Case No. 1:22-cv-550-DAE, (W.D. Tex. July 19, 2023) (ECF No. 53) (dismissing complaint and holding that plaintiff failed to plead facts showing stock sales were suspicious.). Camara's sales were not suspicious, let alone so suspicious as to support an inference of scienter standing alone. Plaintiff concedes that stock sales alone are insufficient. Opp. at 19. Moreover, Camara had no trading history before the Proposed Class period, he sold his shares for $15 *lower* than the class period high, and he sold only 15.1% of his shares, which is too small to raise the required "strong inference" of scienter. *See* Mot. at 19–20.

**B. Any Inference of Scienter Is Not as Compelling as Competing Inferences**

Finally, after discounting the February 2022 call, the Court must also "consider plausible nonculpable explanations for the defendant's conduct," *Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007), an analysis the Court's Order does not reflect. *See generally* Order at

37–38.  To survive dismissal, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 982 (5th Cir. 2019) (citing *Tellabs*); *Hamano v. Activision Blizzard, Inc*, 2019 WL 7882076, at *3 (C.D. Cal. Oct. 17, 2019) (granting motion for reconsideration and dismissing complaint where court did not weigh competing inferences).

Without the February 2022 call, the inference that Camara did not intend to commit securities fraud in September 2021 and January 2022 is far more compelling than an inference of fraudulent intent.  First, the only Review data alleged in the Amended Complaint supports Camara's belief that strong Review growth would continue after he made those statements, which does not support a conclusion that Camara knew Review growth was not sustainable.  *See* Order at 37–38.  Plaintiff alleges that Review revenue tripled in 2020.  AC ¶ 43.  That growth continued: DISCO's Review revenues doubled in fiscal year 2021 (January 2021-December 2021).  AC ¶¶ 43–44.  Consistent with this trajectory, DISCO internally projected that Review revenue would triple in the upcoming year, 2022.  AC ¶ 43.  These facts contradict Plaintiff's theory that Camara knew in September 2021 and in January 2022 that Review revenue growth was about to crater.  Indeed, Plaintiff alleged that DISCO did not miss any internal Review numbers until March 2022, well ***after*** Camara's September 2021 and January 2022 statements, meaning the Amended Complaint contains no allegations that Camara had any reason to believe Review growth would slow.  AC ¶¶ 44, 87.

Second, DISCO's strong ***overall*** revenue growth during the class period likewise contradicts an inference that Camara knew his predictions were wrong.  *See* Order at 37–38.  On September 2, 2021, when Camara made two of his four challenged statements, DISCO announced

$29.5 million in revenue in Q2 2021, exceeding revenue projections. Ex. 2 at 4. DISCO cautioned that Q2 was an "outsized" quarter, the result of "literally everything going right," and that DISCO "couldn't expect that all of those fluctuating trends would stack up magically in Q3." *Id*.; Ex. 5 at 10. Nonetheless, DISCO still exceeded Q3 2021 projections. AC ¶ 31. Then, in February 2022, after Camara had made the statements at issue, DISCO announced that it had exceeded fiscal 2021 projections, generating $114.3 million in revenue. Ex. 8 at 9. Three months later, and based on strong historical growth, DISCO *raised* its fiscal year 2022 guidance, which strongly cuts against any inference of scienter and confirms Camara's belief in DISCO's growth trajectory, including Review.

If, as Plaintiff claims, Camara believed in September 2021 or January 2022 that Review projects had "dried up," it would make no sense for DISCO to raise its guidance in mid-2022, which would have only made it harder for DISCO to meet future market expectations. Given these facts, the far stronger inference is that Camara was genuinely optimistic DISCO would continue to meet or exceed its projections, as it had been doing regularly. *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1245–1248 (10th Cir. 2016), *as amended* (July 6, 2016) (allegation that former employee told executive his forecasts were "unrealistic" did not overcome opposing inference that executive believed his projections).

Third, Camara's statements, read in context, cut against any inference of fraudulent intent. Only one statement addressed DISCO's growth drivers, and that statement disclosed the very information Plaintiff claims DISCO concealed—that large Review projects contributed to growth. AC ¶ 50. Specifically, on the September 2021 earnings call, Camara said that growth accelerated in Q2 2021 because one customer "*experienced a series of major legal issues that caused them to accelerate their adoption of…DISCO Review*" and spent millions. *Id*. If Camara had intended

to conceal a reliance on large Review projects, he would not have discussed Review at all, let alone attributed Q2 2021's growth to large Review projects. *See In re Fastly Inc. Sec. Litig.*, 2021 WL 5494249, at *2 (N.D. Cal. Nov. 28, 2021) (dismissing complaint on scienter grounds where company disclosed that a material portion of its business could be impacted by internet customers being banned by the government). Camara's other three statements, in context, conveyed what he "expect[ed]" to happen in the future "as DISCO grows." Because his statements can–at the very least—be understood as addressing future expectations, not present facts, this undermines any inference that he was trying to mislead investors. If Camara had wanted to mislead shareholders, he would have said that usage fluctuations ***currently*** washout in the aggregate, that DISCO's growth was driven by gradual adoption by all customers, and that the nature of legal budgets guarantees increasing revenue with no volatility. But he did not; his statements were carefully qualified to identify the risk of volatility while describing the anticipated stability that additional customers may bring.

Finally, DISCO and Camara repeatedly warned investors that that it relied on 10% of its customers for much of its revenue, and that those customers could disappear or reduce their usage at any time and for any reason, given the unpredictable nature of litigation lifecycles. Ex. 1 at 21, 27; Ex. 3 at 40, 45; Ex. 4 at 18, 24; Ex. 6 at 41, 46; Ex. 9 at 15, 20. Scienter allegations are inadequate, as a matter of law, when a company has "repeatedly alerted investors" to risks about its business. *Mun. Emps. Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 435, 437 (5th Cir. 2019) (no scienter where company warned that overstocked inventory "would affect the company's output" despite not disclosing such inventory would be marked down); *Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 958 (5th Cir. 2016) (no scienter where the company warned about impact a "labor shortage would have on its financial

results," despite not disclosing that the company's policies caused the shortage); *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *3–4 (W.D. Tex. May 7, 2018), *adopted*, 2018 WL 2422764 (W.D. Tex. May 29, 2018) (no scienter because challenged statements did not mislead investors given company's other disclosures).

For these reasons, the Court should reconsider its scienter holding and dismiss the Plaintiff's remaining claims.

**C. The Court Should Also Reconsider Its Ruling as to the Alleged Falsity of Camara's September 2021 and January 2022 Statements, Further Considering Them in the Context in Which They Were Made**

The Court held that the four surviving statements support a claim because a reasonable investor could interpret them as saying that DISCO customers, at maturity, have a "steady mature spend" that was not "spiky and driven by only a few large Review projects." Order at 21, 35. While the Court appears to have focused on snippets of Camara's statements about "adoption," "washout" of usage fluctuations, "ultimate wallet size," and "ongoing" spend by legal departments in concluding that Camara's statements could be considered false, the surrounding context notified investors that the purchase of DISCO's services by large, mature customers can be spiky because it is driven by one-off major litigation events. *See* AC ¶¶ 50, 52, 62, 64. This holding warrants reconsideration.

In September 2021, Camara explained that "a series of major legal issues" were responsible for the customer's rapid acceleration in spend in Q2 2021—and that adoption of Review drove this growth. Ex. 2 at 5. In doing so, he disclosed the information Plaintiff claims he concealed—that a spike in usage through large Review projects prompted by "major legal issues" drove growth. *Id.* Those matters would inevitably fluctuate (and end), like all litigation. *See* Ex. 2 at 8. In fact, DISCO disclosed that this rapid acceleration led to an "outsized" quarter and something that "you should not expect…every quarter"—the complete opposite of saying that "steady" customer

spending drove growth. *Id.* at 7; 12. In other words, Camara's statement cannot be deemed false or misleading even if the Court assumes the truth of the allegedly undisclosed information (that a small number of large Review projects drove revenue).

Nor did Camara say in September 2021 that fluctuations in usage currently "washout." *See* Order at 20–21. Instead, Camara predicted what he thought would happen in the future: "***as*** DISCO grows our overall revenue base, the impact of any particular customer's fluctuation in usage on our overall revenue ***becomes*** smaller and smaller. And so we would ***expect***, Sterling, but ***as our base grows***, more of these specific customer and usage fluctuations washout in the aggregate." AC ¶ 52; Ex. 2 at 8. Indeed, in this same statement, Camara cautioned that individual customers' "specific legal usage will fluctuate, and that will cause fluctuations in the revenue received from a particular customer." *Id.* This is not a claim that, at maturity, customer spending no longer fluctuates. Rather, this is DISCO disclosing the opposite—that individual customer revenue fluctuates—while also explaining that, as DISCO acquires more customers in the future, the expected and natural fluctuation in any given customer's legal needs would be balanced out by other customers' need for DISCO's services, and that, the impact of any particular customer's fluctuation could become a smaller and smaller part of DISCO's total revenue. While DISCO expressed optimism that, in the future, as its revenue base grows, fluctuations in revenue from individual customers would become less important, DISCO never said that the revenue from each individual customer would cease to fluctuate. *Id.*

Moreover, in January 2022, Camara did not say that DISCO customers have "steady mature spend" that was not "spiky and driven by only a few large Review projects." Order at 21, 35. Rather, he said the opposite – that "the legal matters that a company is exposed to may change from time to time and while unfortunately ***sometimes have spikes in their legal matters*** because

of ***unprecedented issues*** like a defective product or something like that." AC ¶ 62. Any interpretation of Camara's statements as suggesting minimal fluctuations in usage or steady customer spending is fundamentally inconsistent with the nature of DISCO's business—as newsreaders and investors know, litigation comes and goes and is inherently "spiky," as DISCO repeatedly warned. Indeed, DISCO disclosed that when a customer experiences a surge in litigation, it will create a spike in revenue for DISCO — an increase while the litigation is active, and a decrease thereafter, broadly in line with the customer's overall legal spend. Ex. 2 at 7. And this is true whether the customer is a new customer, a growing customer, or a mature customer— that is, regardless of the customer's baseline level of spend. Far from hiding this fact, DISCO disclosed it repeatedly, even expressly saying that "a series of major legal issues" drove growth.

In short, no reasonable investor could have interpreted these statements as suggesting that mature DISCO customers did not have spikes in litigation that produce spikes in revenue for DISCO, including Review revenue. *Jacobowitz*, 596 F. Supp. 3d at 677 (rejecting Plaintiff's attempt to "dramatically alter the meaning and implication" of the challenged statements); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (challenged statements not actionable where complaint asserted a theory that was inconsistent with "what the statement says.") If the Court determines that DISCO's reading of these statements is at least reasonable, then the Court should dismiss the Amended Complaint on scienter grounds. At most, the statements are inartful, where any inference of scienter is undermined by Camara's statements expressly telling investors the information DISCO purportedly concealed.

## V.     Conclusion

For these reasons, the Court should reconsider its Order and dismiss the Amended Complaint in its entirety.

## VI.    Request for Oral Argument

Defendants respectfully request oral argument before the Court, believing it would be useful to the Court in rendering its decision under the securities laws.


Dated: February 27, 2025                        Respectfully submitted,

                                                By:/s/ *Patrick E. Gibbs*
                                                Patrick E. Gibbs
                                                Admitted *Pro Hac Vice*
                                                pgibbs@cooley.com
                                                Brett H. De Jarnette
                                                Admitted *Pro Hac Vice*
                                                bdejarnette@cooley.com
                                                Cooley LLP
                                                3175 Hanover Street
                                                Palo Alto, California 94304-1130
                                                (650) 843-5000 (phone)
                                                (650) 849-7400 (fax)

                                                Peter D. Kennedy
                                                Texas Bar No. 11296650
                                                pkennedy@gdhm.com
                                                Hailey L. Suggs
                                                Texas Bar No. 24113497
                                                hsuggs@gdhm.com
                                                Graves, Dougherty, Hearon & Moody, P.C.
                                                401 Congress Avenue, Suite 2700
                                                Austin, Texas 78701
                                                (512) 480-5764
                                                (512) 480-9908 (Fax)

                                                ***Attorneys for Defendants***

-16-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all counsel of record

on February 27, 2025 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Patrick Gibbs*
Patrick E. Gibbs
