**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| LYNN GAMBRILL, Individually and On Behalf of All Others Similarly Situated, <br><br>                                 Plaintiff, <br><br>              v. <br><br> CS DISCO, INC; KIWI CAMARA; MICHAEL LAFAIR, <br><br>                   Defendants. | Case No. 1:24-cv-00028-RP <br><br> <u>CLASS ACTION</u> |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO RECONSIDER DENIAL OF MOTION TO DISMISS THE
AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................. 1

II.   STATEMENT OF FACTS..................................................................................... 2

III.  ARGUMENT......................................................................................................... 4

    A.    Defendants Impermissibly Seek to Rehash Arguments Considered and Rejected by the Court ........................................................................................................... 4

    B.    Defendants Identify no "Manifest Errors" in the Court's Order ................................ 5

      1.    The Court did not Manifestly Err in Finding a Strong Inference of Scienter ......... 5

      2.    The Court did not Manifestly Err in Finding that the Complaint Alleged False and Misleading Statements................................................................................... 10

    C.    Defendants' Conclusory Assertion that the Control Person Claim against Lafair should be Dismissed Lacks any Merit........................................................... 13

IV.   CONCLUSION .................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) ............................................................................................... 7

*Bass v. U.S. Dept. of Agriculture*,
  211 F.3d 959 (5th Cir. 2000) ............................................................................................... 4

*Demahy v. Schwarz Pharma, Inc.*,
  702 F.3d 177 (5th Cir. 2012) ............................................................................................... 4

*In re Digital Turbine, Inc. Securities Litigation*,
  Case No. 1:22-cv-550-DAE (W.D. Tex. Aug. 22, 2024) (Ezra, J.)............................................ 8

*Jacobowitz v. Range Res. Corp.*,
  596 F. Supp. 3d 659 (N.D. Tex. 2022) .................................................................................. 8

*Liquid Manna, LLC v. GLN Glob. Light Network, LLC*,
  No. 5:14-CV-1123-DAE, 2015 WL 6619224 (W.D. Tex. Oct. 29, 2015) ................................. 8

*Magruder v. Halliburton Co.*,
  359 F. Supp. 3d 452 (N.D. Tex. 2018) .................................................................................. 6

*Nationalist Movement v. Town of Jena*,
  321 F. App'x 359 (5th Cir. 2009)........................................................................................... 4

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ........................................................................................... 4, 6

*Schiller v. Physicians Res. Grp. Inc.*,
  342 F.3d 563 (5th Cir. 2003) ............................................................................................... 4

*Templet v. HydroChem Inc.*,
  367 F.3d 473 (5th Cir. 2004) ............................................................................................... 4

**Rules**

Fed. R. Civ. P. 15(a) ............................................................................................................. 14

Fed. R. Civ. P. 59(e) .............................................................................................................. 4

Lead Plaintiff Bert Pluymen ("Plaintiff") submits this memorandum in opposition to Defendants' motion (ECF No. 54, "Motion") to reconsider the Courts denial in part of Defendants' motion to dismiss Plaintiff's Amended Class Action Complaint (ECF No. 53, "Complaint").

## I.    INTRODUCTION

Defendants' motion to reconsider is based on a fundamental misapprehension of the theory of liability underlying the Court's denial in part of Defendants' motion to dismiss. The Court found that the Complaint alleged that certain of Defendant Camara's statements on conference calls were misleading because they created the impression that "customer spending was driven by gradual adoption across a wide range of matters—with the result being a steady mature spend by the customers," whereas, in reality, customer spending was materially driven by a small number of large Review matters. This rendered CS Disco's earnings growth materially less stable than portrayed by Defendants. Given this theory of falsity, the Court found that the Complaint sufficiently alleged scienter due to Defendants' statements holding themselves out as knowledgeable about the company's sales, and Camara's own statement that he closely tracked customer usage, concluding that "Plaintiffs imply that Camara knew exactly where Disco's revenues came from." Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 69, "Order"). The Order further noted that Plaintiff Camara regularly attended calls where review revenues were discussed, further demonstrating Camara's intimate understanding of the sources of Disco's revenue and creating a strong inference that he was aware of the extent to which Disco's revenue growth was concentrated in a small number of large review matters.

Defendants claim that the Court committed manifest error in considering the statements of a former CS Disco employee who stated that Camara attended regular sales metrics calls, and mentioned that on one call, in February 2022, Camara was informed that Disco's large review projects would end shortly. Defendants argue that because this last call occurred after the last

1

statement the Court found misleading, that this undermines the Court's scienter finding. But because none of the false statements that survived the motion to dismiss related to when Stronghold's large review projects ended, it was not necessary for Plaintiff to show that Camara or any Defendant knew when Disco's review projects would end. Rather, as the Court held, Camara's knowledge of the *source* of Disco's revenue growth is sufficient to establish scienter.

Defendants also assert that the Court manifestly erred four separate times in finding that the Complaint sufficiently alleged four statements to be materially misleading. Defendants argue that each statement was accompanied by adequate cautionary language to render them not misleading. But the context that Defendants identify did not warn investors of the risk that their misstatement concealed – the dependence of Disco's revenue growth on a small number of large review projects. Rather, they stated more generally that one customer's usage "accelerated" due to several different legal disputes, or that while customers generally reach a seven-figure consistent spend at maturity, there is some fluctuation in usage in that seven-figure range. These arguments, which the Court considered and rejected in denying the motion to dismiss, are inappropriate grounds for a motion to reconsider.

## II.    STATEMENT OF FACTS

The First Amended Complaint alleges claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against CS Disco, its CEO, Defendant Camara, and its CFO, Defendant Lafair. CS Disco is an e-discovery company that offers a variety of products including a relatively new "Review" product that assists law firms and corporate clients in conducting document review in connection with litigation. First Amended Complaint, Dkt. No. 53, ("Complaint") ¶ 26. The Complaint advanced two theories of liability: (1) Defendants misled investors regarding the extent to which CS Disco's revenue growth was driven by a small number of large Review matters; and (2) Defendants concealed alleged violations by Camara of Disco's

code of conduct. The Court dismissed all statements related to Camara's alleged violation of Disco's code of conduct, and dismissed several statements related to the former theory of liability, including all statements that the Court found to be forward-looking projections of Disco's actual future revenues. Order Denying In Part Motion to Dismiss, Dkt No. 71, ("Order") at 13-15, 21-27. The Court denied the motion to dismiss as to four statements that Defendant Camara made at an earnings call and an investor conference in September 2021 and January 2022 respectively. Order at 16-21. The Court, after a detailed analysis of the allegations in the Complaint and the parties' arguments, found that "as to this part of their securities claim, Plaintiffs have alleged sufficient facts that Camara's descriptions in the phone call that customer spending was driven by gradual adoption across a wide range of matters—with the result being a steady mature spend by the customers—were either false or misled investors if it is true that customer spending was actually spiky and driven by only a few large Review projects." Order at 21.

Next, Court found that several facts supported a strong inference of scienter. The Court noted that Camara and Lafair held themselves out as knowledgeable about the company's sales and customer use of the company's products, that Camara and Lafair participated in insider stock sales, and that Camara closely tracked customer usage. Order at 37. The Court further noted that FE-3 stated that Camara participated in regular sales calls, noting that on one such call Camara was updated regarding the ending of large review projects. *Id.*

3

III.    **ARGUMENT**

    A.    **Defendants Impermissibly Seek to Rehash Arguments Considered and Rejected by the Court**

As the Fifth Circuit has recognized, "there is no motion for 'reconsideration' in the Federal Rules of Civil Procedure." *Bass v. U.S. Dept. of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000).[1] The Court construes motions for reconsideration as motions to amend or alter judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *Id*.

Rule 59(e) is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment," *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). Rule 59(e) or a motion for reconsideration "should not be used to ... re-urge matters that have already been advanced by a party." *Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009). Reconsideration of a prior order is "an extraordinary remedy that should be used sparingly." *Id.*

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet*, 367 F.3d at 478. "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003)). "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012).

---

[1] Internal quotations and citations are omitted unless otherwise indicated.

4

Defendants' Motion proffers only arguments that they could have presented in their motion to dismiss the Complaint. These issues were fully briefed by the parties, and the Court thoroughly considered and addressed those arguments in its Order. In their Motion, Defendants attempt to mischaracterize the arguments previously presented to, and considered by, the Court in order to justify a second bite at the apple. That Defendants disagree with the outcome of the Court's decision and now wish to reframe and re-litigate their rejected arguments is not valid grounds for reconsidering or altering the Court's Order.

**B.     Defendants Identify no "Manifest Errors" in the Court's Order**

Defendants move for reconsideration of the Court's Order not on the basis of an intervening change of controlling law, nor on the basis of new evidence, but only to correct purported "manifest errors." However, what Defendants claim are manifest errors are merely Defendants' own disagreements with the Court's reasoning and conclusions.

**1.     The Court did not Manifestly Err in Finding a Strong Inference of Scienter**

**a.     The Court did not Make a Chronological Error**

Defendants claim that the Court committed a chronological error by relying on the statement of a confidential witness stating that Camara participated in regular sales metrics calls and that on one such call, in February 2022, Camara was informed of when several large review projects would be ending. Defendants argue that because this February 2022 call occurred after all false statements that the court sustained, the Court erred in relying on that call to support an inference that Camara knew when the large Review projects would end. This argument is fatally flawed, however, because Defendants fail to explain why Plaintiff was required to show that Camara knew when the large Review projects would end in order to establish scienter as to the statements that survived the motion to dismiss. The Court found that the only "plausible securities

5

fraud claim alleged is Plaintiffs' allegations pertaining to Disco's growing usage and customer maturity based on Camara's descriptions that customer spending was driven by gradual adoption across a wide range of matters—with the result being a steady mature spend by the customers." Order at 35. Therefore, Camara acted with scienter when he concealed Disco's reliance on a small number of large Review matters even if he did not know at the time of his statements exactly when those matters would end. The fact that Camara participated in regular sales metrics calls that supports an inference that he knew exactly the sources of CS Disco's revenue — the specific statements on the February 2022 call are simply illustrative of the level of detail discussed on the call. Defendants' authority does nothing to undercut a strong inference of scienter. *Magruder* simply held that a statement referring to a "strategy error" three years after the class period cannot retroactively show scienter during the class period. *Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 471 (N.D. Tex. 2018). *Rosenzweig* turned on whether a report from an investment bank regarding problems with an acquisition that referred to problems "since the acquisition" meant that the problems existed at the time of the acquisition or afterwards. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 868 (5th Cir. 2003).

Finally, Defendants' argument that Camara's supposed warnings that Review for major issues was driving acceleration in growth somehow undercuts an inference of scienter is meritless. First, Camara's statement on a September 2, 2021 conference call did not "warn" investors that a small number of large Review projects were driving growth in the second quarter of 2021. Rather Camara described the spend of a single customer as an "example" of what drove acceleration in growth, noting that the customer experienced "a series of major legal issues." Complaint ¶50. The use of "series" implies that this single client was conducting multiple review projects.

6

**b.    Defendants Improperly Attempt to Relitigate All Other Scienter Factors the Court credited**

Defendants claim that the Complaint's detailed allegations regarding Defendants' knowledge of the sources of CS Disco's revenue and their close tracking of customer usage do not establish a strong inference of scienter. Their argument again disregards the subject matter of the misstatements that remain in the case. Defendants claim that the allegations are insufficient because "Plaintiff does not allege that usage was going down in September 2021 or January 2022, nor that sales targets were being missed, nor that any other data suggested that Review growth was not sustainable." Motion at 7. But the Court has dismissed all false statements regarding Disco's future sales performance. Rather, the Court only found misleading statements regarding Disco's steady revenue growth, finding that they were adequately pled to be misleading for failing to disclose that "customer spending was actually spiky and driven by only a few large Review projects." Order at 21. Defendants rely on *Abrams v. Baker Hughes*, an opinion Defendants neglected to cite in their motion to dismiss papers, to argue that the scienter allegations in this regard are inadequate. *Abrams*, however, rejected a conclusory and unsupported assertion that defendants received frequent reports: "'Individual Defendants each received daily, weekly[,] and monthly financial reports to apprise them of the true financial status of Baker Hughes.' Compl. ¶ 95. No back-up support is given for this contention, however." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 438 (5th Cir. 2002) (Parker, J. concurring). Here, by contrast, the Complaint does not merely make conclusory allegations about what information Defendants had access to. Rather, it quotes Defendant Camara himself describing exactly the sort of information he had access to and reviewed. Complaint ¶86. *Range Resources* rejected scienter allegation based on a confidential witness's claim that a defendant had access to internal reports because the complaint lacked any detail about "when the reports were created, when they were presented to Defendants, or whether

7

Defendants actually saw the reports" and that the complaint's description of the reports lacked detail. *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 687 (N.D. Tex. 2022) (cleaned up). That contrasts sharply with the facts here, where Camara himself described the information he received. It is unclear what relevance the Court's decision in *Digital Turbine* has, as that case simply says the fact that a company knew of the net revenue figures of a company it acquired does not mean that it also knew that the figures did not comply with GAAP. *In re Digital Turbine, Inc. Securities Litigation*, Order Granting Mot. to Dismiss at 21, Case No. 1:22-cv-550-DAE (W.D. Tex. Aug. 22, 2024) (Ezra, J.) (ECF No. 72).

Defendants claim, in a conclusory fashion, that Camara's stock sales cannot be used to support an inference of scienter because they are not "suspicious". Rather than explain why the stock sales were not suspicious or why the Court's consideration of them constituted manifest error, Defendants simply cite their argument in their Motion to Dismiss, in total disregard of the rule that motions to reconsider are not vehicles for arguments that could have or were raised in prior briefing. *Liquid Manna, LLC v. GLN Glob. Light Network, LLC*, No. 5:14-CV-1123-DAE, 2015 WL 6619224, at *2 (W.D. Tex. Oct. 29, 2015). Furthermore, Defendants simply disregard the opposition's explanation for *why* the stock sales were suspicious – that they followed shortly after a misleading statement, Opp. at 19, something they also failed to do in their Reply in support of their motion to dismiss. Nor do they respond to Plaintiffs' explanation of why the cases they cited in their Motion to Dismiss memorandum were inapposite.

          **c.**        **The Most Compelling Inference is that Defendants were at Least Reckless**

Defendants argue that, without the former employee's statement, the most compelling inference is that Camara lacked scienter. But this argument, like the rest of their scienter argument, continues to be based on their wholesale misunderstanding of what rendered the statements that

survived the motion to dismiss misleading, and, therefore, what facts about Camara's state of mind would render those statements knowingly or recklessly misleading. For instance, Defendants claim that "the only Review data alleged in the Amended Complaint supports Camara's belief that strong Review growth would continue after he made those statements." Motion at 9. But given that the misleading statement is about the concentration of revenue in a small number of large Review projects, any belief by Camara that those projects would continue and therefore drive revenue growth in the short term does nothing to negate an inference that he was aware of the revenue concentration.

Defendants next claim that "DISCO's strong overall revenue growth during the class period likewise contradicts an inference that Camara knew his predictions were wrong" and that "[i]f, as Plaintiff claims, Camara believed in September 2021 or January 2022 that Review projects had 'dried up,' it would make no sense for DISCO to raise its guidance in mid-2022, which would have only made it harder for DISCO to meet future market expectations." Motion at 10. The fatal flaw with this argument is that the Court has already found that Camara and Lafair's revenue predictions were inactionable. Order at 25-27. Therefore, whether Camara believed his revenue predictions or not no longer has any bearing on his scienter.

Third, Defendants argue that Camara could not have intended to conceal "that large Review projects contributed to growth" because they disclosed that *one* customer experienced a series of legal problems that led them to "accelerate" their adoption of Disco review. Motion at 10. This argument suffers from the same fatal flaw as the others – it disregards what about Camara's statements was misleading. What Camara concealed is not that large review matters contributed to growth, but that a *handful* of large matters materially drove growth. Defendants do not even try to explain how Camara's statement could have informed investors about that. To the contrary, it

9

implies that Review adoption is driven by a large number of separate Review matters, rather than a handful of very large ones.

Finally, Defendants' claim that "DISCO and Camara repeatedly warned investors that that it relied on 10% of its customers for much of its revenue, and that those customers could disappear or reduce their usage at any time and for any reason, given the unpredictable nature of litigation lifecycles" does nothing to undercut an inference of fraudulent intent. Motion at 11. Given this context, it is clear that Camara's misleading statements were intended to downplay the risk of its reliance on 10% of its largest customers. For instance, Camara's claim that Disco's largest customers "have dozens or hundreds of simultaneous active matters in our platform" materially downplayed the risk that those large customers' business would suddenly dry up. Order at 18.

### 2. The Court did not Manifestly Err in Finding that the Complaint Alleged False and Misleading Statements

Defendants' argument that the court should reconsider its holding that Defendants made four materially misleading statements during the class period outlines Defendants' disagreement with the Court's holding, but it does nothing to explain why that holding was manifest error. Defendants point to no fact overlooked by the court, no binding precedent ignored by the Court, nor even any argument that the Court failed to address. Rather, Defendants simply argue that "no reasonable investor" could interpret their statements as the Court did.

Defendants' claim that the Court focused on "on snippets of Camara's statements" without regarding their wider context is simply false. The Court specifically acknowledged that CS Disco warned that the "company's reliance on a small number of large customers that could stop their usage of Disco's products at any time", but nonetheless found the statements to be misleading. Order at 20. In any event, the context Defendants claim renders their misstatements not misleading do nothing of the sort.

10

First, Defendants argue that in Disco's September 2021 earnings call, Camara explained that "'a series of major legal issues' were responsible for the customer's rapid acceleration in spend in Q2 2021—and that adoption of Review drove this growth." Mot. At 12. Defendants claim that this context rendered their statements not misleading. Defendants' argument is based on a fundamental misreading of the Court's decision. The Court did not hold that the statements were plausibly alleged to be misleading for failure to disclose that Review contributed to revenue growth in general. Rather, the Court found that the statements could be misleading for concealing that revenue growth was concentrated in a "handful" of large review projects. Order at 20. The statement Defendants cite does nothing to correct that misimpression. Indeed, a reasonable investor would likely infer from Camara's claim that if the customer in question had "a series of major legal issues", then it is likely the customer had several Review projects ongoing.

Next, Defendants claim that Camara's statement that "as DISCO grows our overall revenue base, the impact of any particular customer's fluctuation in usage on our overall revenue becomes smaller and smaller" was not misleading because it was a description of what would happen to Disco in the future, and in any event, it specifically warned that a particular customer's revenue could fluctuate. Defendants' argument is deficient for multiple reasons. First, the portion of Camara's statement that Defendants cite is not the only part that Plaintiff alleged was misleading. Earlier in the same statement, Camara claimed that "each of our customers goes through an adoption journey that has historically taken several years, and typically, they'll start out as a kind of mid to tougher five-figure customer grow to be a six-figure customer and then grow to be a seven-figure customer at maturity." Order at 17. This statement is in the present tense, not the future. In addition, when Camara stated that there are fluctuations in customer spend, a reasonable investor, aware of Camara's claim that customers grow to be seven figure customers at maturity,

11

would understand those fluctuations to be within the seven-figure range. That is materially different from a customer that is only spending seven figures because of a one-off large Review matter.

Next, Defendants turn to their January 2022 statements, arguing they are all immunized from liability because of Defendants' statement that "the legal matters that a company is exposed to may change from time to time and while unfortunately sometimes have spikes in their legal matters because of unprecedented issues like a defective product or something like that." Motion at 13-14. But the larger context shows that this statement did nothing to cure the misleading nature of Defendants' other statements. First, Camara's comment was in response to the question "[a]round the complexity question often comes a view point that customers use a platform like Disco for maybe a short time frame and then maybe on an infrequent basis, but for an average Fortune 1000 type customer that you might have, how many matters could they be managing concurrently?" Order at 18. Camara initially responded by stating that "for mature customers, they'll have dozens or hundreds of simultaneous active matters in our platform" with many matters going back to 2013. *Id.* Then, while acknowledging that customers sometimes have spikes in legal matters, Camara reassured investors that, "[p]eople, in general, have an ongoing and continuous spend on their legal department and on legal services and that is the budget that we tap into." *Id.* The effect of the statement, therefore, was not to warn investors of the impact of spikes in legal spend, but to minimize the aspects of such spikes.

Defendants also wholly fail to address the final statement the Court found to be misleading, perhaps because that statement gives lie to Defendants' claim that Camara adequately warned investors of the risk to Disco's revenues of a small number of large review matters. Camara was asked "is expansion of e-discovery use fairly predictable across customer sets or is there a wide

12

variance in potential expansion outcomes?" Camara responded that "I would say there's not as much variance in the ultimate wallet size of the customer" and that "the wallets are pretty consistent across the kinds of customers, who we target and sell to, which is typically the high end of the market". *Id.*

Defendants conclude that "no reasonable investor could have interpreted these statements as suggesting that mature DISCO customers did not have spikes in litigation that produce spikes in revenue for DISCO, including Review revenue." Mtn. at 14. But this misconstrues what Plaintiff argued in opposing the motion to dismiss and what the Court found in denying it. When analysts were specifically concerned about spikes in litigation spends leading to fluctuations in revenue for Disco, Camara repeatedly and falsely reassured the public that customers spend was spread across many matters. Defendants next make the bizarre plea that "[i]f the Court determines that DISCO's reading of these statements is at least reasonable, then the Court should dismiss the Amended Complaint on scienter grounds." Mtn. at 14. Defendants' assertion that they have a merely "reasonable" interpretation of the misleading statements falls far short of showing any manifest error that would justify the filing of a motion for reconsideration.

### C.    Defendants' Conclusory Assertion that the Control Person Claim against Lafair should be Dismissed Lacks any Merit

In a footnote, Defendants assert that the control person claim against Lafair should be dismissed, relying on an out of circuit opinion, because, according to Defendants, the Complaint fails to allege Lafair's control over Camara. Defendants' conclusory demand that the Court revisit its decision is wholly inadequate to meet the high burden of demonstrating manifest error. Moreover, Defendants' assertion that Lafair did not control Camara disregards the fact that the Complaint alleges that Lafair controlled Disco. Moreover, Defendants never presented this argument in moving to dismiss the Complaint.

13

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. To the extent the

Court grants the motion, Plaintiff requests leave to amend. Fed. R. Civ. P. 15(a).


Dated: March 13, 2025                          Respectfully submitted,

                                               **THE ROSEN LAW FIRM, P.A.**

                                               /s/ Jonathan Stern
                                               Jonathan Stern (*pro hac vice*)
                                               275 Madison Avenue, 40th Floor
                                               New York, NY 10016
                                               Telephone: (212) 686-1060
                                               Fax: (212) 202-3827
                                               Email: jstern@rosenlegal.com

                                               *Lead Counsel for Lead Plaintiff and the Class*

                                               -and-

                                               **KENDALL LAW GROUP, PLLC**
                                               Joe Kendall
                                               Texas Bar No. 11260700
                                               3811 Turtle Creek Blvd., Suite 825
                                               Dallas, Texas 75219
                                               Phone: (214) 744-3000
                                               Fax: (214) 744-3015
                                               Email: jkendall@kendalllawgroup.com


                                               *Liaison Counsel for Lead Plaintiff and the Class*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2025, a true and correct copy of the foregoing document was served on all counsel of record registered via the Court's CM/ECF electronic filing system.

/s/ Jonathan Stern
Jonathan Stern
