**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LYNN GAMBRILL, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | No. AU:24-CV-00028-DAE |
| CS DISCO, INC., KIWI CAMARA, and MICHAEL LAFAIR, | § § § | |
| *Defendants*. | § § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION AS TO COURT'S RULINGS ON SCIENTER AND FALSITY (ORAL ARGUMENT REQUESTED)**

## I.   Introduction and summary.

This securities fraud case now rests entirely on Plaintiff's claim that statements made by Camara in September 2021 and January 2022 were misleading by omission. But Plaintiff now concedes that, with respect to those remaining statements, the Court cannot infer fraudulent intent from allegations about an unnamed employee's February 2022 comments to Camara about Review projects "drying up." Because those allegations were critical to this Court's scienter finding, Plaintiff's concession confirms that reconsideration is warranted. Indeed, all that now remains to support scienter is an allegation that Camara (like all CEOs) had access to data on DISCO's revenue sources – a patently insufficient, conclusory allegation – and a small, non-incriminating stock sale. Plaintiff does not (and cannot) allege that any internal data signaled an upcoming drop in DISCO's revenue that Camara knew of and should have disclosed. Nor does Plaintiff allege any facts to show that Camara knew Review would not sustain his predictions.

Given the irrelevance of the employee's alleged February 2022 statement, Plaintiff alleges no other data signaling an upcoming revenue drop at the time of Camara's statements, nor has

Plaintiff alleged that Camara knew a small number of large Review projects were going to "dry up." Nor has Plaintiff alleged facts supporting the underlying premise of his claims – that DISCO's revenue growth in September 2021 or January 2022 depended on a small number of large Review matters. Thus, Plaintiff is left arguing that Camara acted with fraudulent intent because he did not disclose DISCO's alleged reliance on a small number of large matters that, if lost, would materially impact the company's revenue. But Camara *did* disclose that risk in his September 2021 and January 2022 statements, and DISCO repeatedly disclosed that risk in its corporate filings. Because the law is clear that Plaintiff's surviving allegations cannot support an inference of actionable scienter as to the remaining statements at issue, this lawsuit should be dismissed.

Along with scienter, the Court should also reconsider whether Plaintiff adequately pled falsity as to Camara's September 2021 and January 2022 comments. Those were not misleading because they did not claim that DISCO's revenue growth was attributable to "gradual adoption" and "steady" growth from mature customers, with no threat of volatility due to the uncertain nature of civil litigation. *See* Order at 19-21. Because Camara and DISCO repeatedly disclosed the connection between DISCO's revenue growth and the volatile litigation needs of its clients, his statements were not misleading when made simply because Camara did not make an additional, specific statement that a small number of large Review projects allegedly drove DISCO's growth.

## II.    When the Court reconsiders Plaintiff's scienter allegations without relying on the February 2022 metrics call, it will see that those allegations fail to state a claim.[1]

Plaintiff's lawsuit now rests entirely on statements made by Camara in September 2021 and January 2022. Order at 16-21. Plaintiff concedes that what a former employee purportedly

---

[1] Plaintiff argues that the Court may only grant reconsideration if Defendants show a "manifest error." Opp. at 4-5. But a court may grant reconsideration for "any reason it deems sufficient." *Rivas v. Greyhound Lines, Inc.*, 2016 WL 11164796, at *4 (W.D. Tex. Jan. 11, 2016). Nonetheless, Defendants believe the issues raised in their motion meet this standard.

told Camara in February 2022, *after* he made the allegedly false statements, cannot support an inference of fraudulent intent at the time the statements were made.  Opp. at 6.

Plaintiff resists reconsideration anyway, claiming that this Court's reference to the February 2022 metrics call was "simply illustrative" of the type of information generally discussed during such calls.  *Id*.  This is plainly false.  The Court did not cite the February 2022 call as illustrative; it cited the call as a specific allegation that Camara *knew* "'revenue from large Review matters would dry up beginning in March of 2022,' and that the former employee 'specifically discussed this issue with Camara after that call.'"  Order at 37.  After reciting these allegations, the Court concluded, "*[t]hus*, Plaintiffs maintain *Camara knew that the Review projects would not sustain the predictions Camara made in the statements at issue*.'"  *Id*. at 37-38.[2]  Then, assuming these allegations to be true, the Court held that Plaintiff adequately pled that Camara acted with fraudulent intent.  *Id*.

The parties agree that the February 2022 metrics call is now immaterial.  The few allegations that remain once that call is disregarded are insufficient to raise the requisite "strong inference" of scienter.

### A.    Plaintiff's remaining scienter allegations are insufficient.

Plaintiff complains that Defendants "improperly attempt to relitigate all other scienter factors," Opp. at 7, but given that (a) only the September 2021 and January 2022 statements remain at issue, and (b) the Court's dismissal of all other statements makes the February 2022 metrics call immaterial, a reevaluation is necessary because, as this Court recognizes, scienter allegations must be evaluated "collectively."  Order at 34-35 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).

---

[2] All emphasis is added unless otherwise noted.

Only three such allegations remain: (1) a conclusory allegation that Camara "acted with scienter," (2) Camara's alleged "knowledge of the source of DISCO's revenue growth," and (3) Camara's stock sales.  These allegations, considered separately or together, are insufficient.

First, Plaintiff does not dispute that his bare allegation that DISCO "acted with scienter" must be disregarded.  *Melder v. Morris*, 27 F.3d 1097, 1102-03 (5th Cir. 1994).

Second, the mere knowledge of an omitted fact – here, Camara's alleged knowledge that DISCO's revenue was concentrated in a small number of Review customers – "without more, is not sufficient to demonstrate that the defendant intentionally withheld those facts … or recklessly disregarded the importance of those facts."  *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *41 (S.D. Cal. Mar. 30, 2005).  Simple "knowledge of an omission" does not itself raise an inference of scienter in a fraud-by-omission case like this one.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005).[3]  And while Plaintiff argues that DISCO concealed "that sales were highly dependent on spiky review revenue," Opp. Mot. to Dismiss ("Opp."), ECF 57 at 17, Plaintiff cites nothing to overcome that DISCO and Camara specifically disclosed throughout the class period that Review for "major" issues (*i.e.*, large reviews) drove "acceleration in growth" in the second quarter of 2021, AC ¶ 50, while cautioning that "the usage-based nature of our business" drives "variability in our results," and that clients "sometimes have spikes in their legal matters." Ex. 7 at 4, 11 (all "Ex." citations refer to the exhibits to the Motion to Dismiss, ECF No. 54-1).

Plaintiff argues that *In re Digital Turbine, Inc. Securities Litigation* is "irrelevant" because

---

[3] *See also In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 850 (N.D. Tex. 2005) (dismissing complaint without allegations of facts showing defendants "did not reasonably believe in their views or optimism at the time they expressed them."); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 579 (S.D.N.Y. 2016) ("[A]n inference of scienter does not follow from the mere fact of non-disclosure of relevant information … .  [T]he key … is the honest belief of the management in the truth of information issued to the public.") (quotations and citations omitted).

"that case simply says the fact that a company knew of the net revenue figures of a company it acquired does not mean that it also knew that the figures did not comply with GAAP." Opp. at 8. But that is **exactly the point** – this Court held that scienter could **not** be inferred simply from a company's knowledge of undisclosed revenue figures; the Court dismissed the complaint because there were no facts alleged showing that the defendant "knew these figures" were wrongly calculated "and used them anyway." Order Granting Motion to Dismiss at 21, *In re Digital Turbine, Inc. Sec. Litig.*, No. 1:22-cv-550-DAE (W.D. Tex. Aug. 22, 2024), ECF No. 72. Similarly, in *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, the court held that knowledge of the purportedly omitted information – inventory and sales figures – did not "raise a strong inference of severe recklessness that is at least as compelling as the competing inference that [company executives] did not know, or negligently predicted that Pier 1 would not have to mark its excess inventory down in order to sell it." 273 F. Supp. 3d 650, 672–73 (N.D. Tex. 2017). The court noted that:

> [T]he Fifth Circuit held in *Neiman* that "for allegations concerning internal corporate reports alone to support a strong inference of scienter (1) the complaint must have 'corroborating details regarding the contents of allegedly contrary reports, their authors and recipients[,]'and (2) the corporate reports be connected to the speaking executive in a persuasive way."

*Id*. at 673 (quoting *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017)).

Here, the only alleged "contrary report" came during the February 2022 metrics call, which must be disregarded because it came after Camara made the statements at issue. Plaintiff alleges no facts supporting an inference that, in September 2021 and January 2022, Camara knew of internal data contradicting his statements. Indeed, for good reason, Plaintiff does not allege what DISCO's usage or revenue data showed at the time, because it is undisputed that DISCO had been meeting or exceeding its forecasts. AC ¶¶ 31, 43-44; Ex. 5 at 10; Ex. 8 at 9. In fact, it continued

to do so for two quarters after Camara's last statement in January 2022.  AC ¶ 31; Ex. 11 at 7.

Moreover, Plaintiff pleads no particularized facts supporting his premise that DISCO's growth, in fact, depended on a small number of large Review matters in September 2021 and January 2022.  Plaintiff claims he pleads "exactly the sort of information Defendants had access to,"[4] but he does not allege that Camara had data showing that DISCO's revenue growth materially depended on a single-digit number of large Review projects *at the time he spoke*.  Opp. at 7.[5]

Instead, Plaintiff works backwards from DISCO's August 2022 revision of its fiscal year 2022 guidance, where the company disclosed that "the volatility that we're talking about in the review business has to do with the presence or absence of a low single-digit number of big-ticket reviews."  AC ¶ 74.  This disclosure does not plausibly support an inference that DISCO's overall revenue growth *eleven months earlier* relied on "a low single-digit number of big-ticket reviews," let alone a "strong inference" of Camara's fraudulent intent.  This is a textbook attempt to plead fraud by hindsight, which is routinely rejected.  *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 881–82 (S.D. Tex. 2002), *aff'd sub nom. Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) (dismissing allegations that defendants "*fraudulently* 'touted' their probabilities for success, simply because [their] business prospects ultimately declined") (emphasis in original); *Alamosa Holdings*, 382 F. Supp. 2d at 843-44, 866 (dismissing lawsuit filed after company revised guidance

---

[4] Likewise, Plaintiff's objection that "Camara himself described the information he received," Opp. at 8, does nothing to overcome the failure to plead particularized facts about what that information showed or when Camara received it.

[5] Like here, in *Jacobowitz* the plaintiff failed to adequately plead that the reports the defendant received actually contradicted his statements, *i.e.*, showed that an oil well was in fact abandoned. *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 687 (N.D. Tex. 2022).  Similarly, in *Abrams* the plaintiff, though pleading the existence of reports, failed to plead facts showing the defendant had access to the financial data that allegedly contradicted his public statements. *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431–32 (5th Cir. 2002).  Plaintiff here fails to plead particularized facts that the usage data contradicted Camara's September 2021 and January 2022 statements.

downward, as "fraud by hindsight").

Finally, Plaintiff does not dispute that stock sales alone are insufficient to raise an inference of scienter.  Mot. at 8; Opp. at 8.  Instead, Plaintiff argues that Defendants did not explain how Camara's sales were not "suspicious," Opp. at 8, forgetting that *he* has the pleading burden.  *See* Order at 20, *Digital Turbine*.  Plaintiff ignores the undisputed facts that Camara (1) had ***no trading history*** in DISCO stock before the Proposed Class period; (2) sold his shares for ***$15 lower*** than the class period high, and (3) sold only ***15.1%*** of his shares.  Decl. of Brett De Jarnette in Support of Mot. ¶ 18, ECF No. 54-1.  These allegations are insufficient, as a matter of law, to raise the required "strong inference" of scienter.  *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 601 (N.D. Tex. 2021) (no scienter from $23 million sale absent allegations of prior trading history); *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 543 (5th Cir. 2008) (no scienter where sales were below market high); *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (sales of 17% and 98% insufficient to raise an inference of scienter).

**B.    The most compelling inference is innocent, not fraudulent, intent.**

Plaintiff does not dispute that the Court's order does not expressly weigh competing inferences – fraudulent versus innocent intent – in assessing scienter, as required.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 51 U.S. 308, 310 (2007); *see Hamano v. Activision Blizzard, Inc*, 2019 WL 7882076, at *3 (C.D. Cal. Oct. 17, 2019) (dismissing complaint upon reconsideration after weighing competing scienter inferences).  That necessary analysis favors dismissal.

Plaintiff does not contest that, in September 2021 and January 2022, DISCO's Review and total revenues were growing, and that DISCO was meeting or exceeding predictions.  AC ¶¶ 31, 43-44, 87; Ex. 5 at 10; Ex. 8 at 9.  Nor does he appear to dispute that Camara believed, at that time, that Review growth was sustainable, and that DISCO would continue to exceed its predictions.  *Id*. Rather, Plaintiff argues that Camara's genuine belief in DISCO's future revenue growth is

immaterial, and that what *really* matters is Camara's alleged knowledge of DISCO's "revenue concentration." Opp. at 9. But the Court was correct to consider whether "Camara knew that the Review projects would not sustain the predictions Camara made." Order at 37–38. As noted above, once the February 2022 metrics call is disregarded, no facts support that allegation.

Moreover, Plaintiff's allegations do not add up. While he claims that Camara's alleged failure to disclose DISCO's "concentration of revenue" made any affirmative prediction of "steady revenue growth" misleading by omission, Opp. at 7, Plaintiff does not allege that Camara knew in September 2021 or January 2022 – contrary to DISCO's historic performance – that Review revenue was unstable or would fall short. Without that claim, any alleged failure to disclose the "concentration of revenue" cannot support a plausible inference that Camara knew or was severely reckless that his statements were false or misleading by omission when made. To the contrary. Camara's knowledge of DISCO's past performance raises an inference of innocent intent, as of September 2021 and January 2022, far more compelling than an intent to defraud.

Likewise, Camara's statement to investors in September 2021 that a DISCO customer had a "series of major legal issues" that caused them to "accelerate" their adoption of Review and generated millions, AC ¶ 50, supports an inference of innocent intent, not fraud. While Plaintiff complains that Camara did not specifically say that a "handful of large matters materially drove growth," Opp. at 9, Camara's statement that a *single* customer's experience generated millions in revenue was entirely consistent with that point. If Camara intended to conceal DISCO's alleged reliance on large Review projects – as Plaintiff claims – why would he have discussed Review at all, let alone attributed Q2 2021's growth to large Review projects? He would have avoided the issue entirely if his intent was to defraud.

Finally, Plaintiff does not dispute that DISCO and Camara expressly warned investors of

-8-

the very point that he claims was not disclosed:  that DISCO relied on 10% of its customers for most of its revenue, and that those customers could disappear or reduce their usage at any time for any reason, given the unpredictable nature of litigation lifecycles.  *See* Ex. 1 at 21, 27; Ex. 3 at 40, 45; Ex. 4 at 18, 24; Ex. 6 at 41, 46; Ex. 9 at 15, 20.  And he simply ignores the cases holding that scienter allegations are inadequate, as a matter of law, when a company has "repeatedly warned investors" to risks about its business.  Opp. at 10; *see cases cited at* Mot. at 11-12.  Instead, Plaintiff argues that Camara's statement that DISCO's largest customers "have dozens or hundreds of simultaneous active matters in our platform" materially understated the risk of losing those customers' business.  Opp. at 10.  ***But that is exactly the risk that Camara and DISCO disclosed*** – the company's reliance on 10% of its customers for most of its revenue.  Given Camara and DISCO's statements and their disclosure of the risks faced by investors in a litigation-support company, the strongest inference by far is innocent intent, not an intent to defraud those investors.

III.    **Camara's September 2021 and January 2022 statements, considered in context, were not misleading.**

Plaintiff is also wrong that the few statements remaining were misleading when made.

First, Plaintiff illogically argues that Camara's September 2021 statement about a single customer's "multimillion dollar level" spend on Review created a "misimpression" that revenue growth was ***not*** concentrated in a "handful" of large review projects.  Opp. at 11.  To the contrary: calling out a single customer's large spend is consistent, not inconsistent, with an alleged "concentration of revenue."  Moreover, Camara disclosed the information Plaintiff claims he concealed – that Q2 2021 revenue growth "accelerated" because of Review projects flowing from a single customer's "series of major legal issues."  Ex. 2 at 5.  Plaintiff argues that Camara misled investors by referring to a "series" of Review projects instead of a "handful."  Opp. at 11.  But this kind of verbal nitpicking cannot support a securities fraud claim, especially one claiming falsity

by omission.  *See In re Intuitive Surgical Sec. Litig*, 65 F. Supp. 3d 821, 836 (N.D. Cal. 2014) (dismissing complaint because "the information the company did provide was entirely consistent with the more detailed explanation [] that the plaintiffs argued [] should have [been] included.").

Second, Plaintiff concedes that Camara's September 2021 statement that revenue fluctuations will "washout" in the aggregate as DISCO adds future customers is not misleading on its own and instead argues that Camara's description of "seven-figure customer[s] at maturity" meant that any revenue *fluctuations* also would fall "within the seven-figure range."  Opp at 11-12.  Camara's "washout" prediction made no such promise and cannot be reasonably read as implying one.  Nor did Camara mislead investors by omitting details about Review because, as he later explained, his reference to customer "maturity" *was not about Review*; it was about "spend on the *Ediscovery* product."  Ex. 2 at 17.

Third, Camara's January 2022 statement that customers will have "dozens or hundreds of simultaneous active matters" and that customers have an "ongoing and continuous spend" on legal budgets was not misleading about Review because Camara was speaking about customers' *potential* matters across all DISCO products, not its current Review matters.  This statement did not "minimize[] the aspects" of revenue spikes from Review as Plaintiff argues, because this statement *was not just about Review*.  Ex. 7 at 4.

Fourth, Camara's January 2022 statement that there was not much variance in the "ultimate wallet size" of customers also was *not about Review* or about actual revenue received, but was in response to a question about DISCO's Ediscovery product, which cuts against any reasonable interpretation of this statement as relating to Review's impact on revenue.  Opp. at 12-13.

Thus, three of the four remaining statements at issue were not even about Review and the fourth disclosed the very information that Plaintiff claims DISCO concealed.  Read in context,

Plaintiff has failed to allege that any of those statements were false, let alone false by omission. *See, e.g.*, *Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 465 (N.D. Tex. 2018) (dismissing claims based on statements where "there simply is too attenuated a relationship between the allegedly misleading statements and the omissions").

## IV.     Conclusion

For these reasons, the Court should reconsider its Order and dismiss the Amended Complaint in its entirety.[6]

Dated: March 20, 2025                              Respectfully submitted,

*/s/ Patrick E. Gibbs*
Patrick E. Gibbs
Admitted *Pro Hac Vice*
pgibbs@cooley.com
Brett H. De Jarnette
Admitted *Pro Hac Vice*
bdejarnette@cooley.com
Cooley LLP
3175 Hanover Street
Palo Alto, California 94304-1130
(650) 843-5000 (phone)
(650) 849-7400 (fax)

---

[6] Lafair should be dismissed for the additional reason that he is not alleged to be a "control person" as to the statements remaining at issue.  Plaintiff does not allege that he controlled Camara or Camara's statements, and he ignores *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, which affirmed dismissal of securities fraud claims against a CFO where the complaint failed to allege that she "exercised actual power or control over" the company's founder and CEO.  81 F.4th 918, 946 (9th Cir. 2023).  Plaintiff merely asserts conclusory allegations that Lafair controlled DISCO, not Camara, and even that broad allegation is unsupported by facts.

Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com
Hailey L. Suggs
Texas Bar No. 24113497
hsuggs@gdhm.com
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5764 (phone)
(512) 480-9908 (fax)

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all counsel of record on March 20, 2025, via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Peter D. Kennedy*