**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| LYNN GAMBRILL, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>        v.<br><br>CS DISCO, INC; KIWI CAMARA; MICHAEL LAFAIR,<br><br>           Defendants. | Case No. 1:24-cv-00028-DAE<br><br><u>CLASS ACTION</u> |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND
CLASS COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................... 1

ARGUMENT.......................................................................................................................... 2

   I.     DEFENDANTS FAIL TO REBUT THE PRESUMPTION OF PRICE IMPACT .... 2

      A.   Because they Concede that CS Disco Stock Traded in an Efficient Market During the Class Period, Defendants Bear the Burden of Proving a lack of Price Impact.................................................................................................................... 2

      B.   Defendants Cannot Show Lack of Price Impact Because of the Close Link Between the Information Omitted from the Misstatements and the Information Disclosed in the Corrective Disclosure ................................................................................ 2

      C.   Defendants' Internal Projections Are Irrelevant to the Price Impact Analysis....... 7

  II.     PLAINTIFFS CAN CALCULATE CLASSWIDE DAMAGES................................... 8

CONCLUSION ..................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) .......................................................................................... 3

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ............................................... 4

*Basic Inc. v. Levinson*,
485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) ................................................... 2

*Comcast Corp. v. Behrend*,
569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) ................................................. 8

*Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
No. CV H-21-2045, 2023 WL 6300569 (S.D. Tex. Sept. 27, 2023) ................................. 3

*Edwards v. McDermott Int'l, Inc.*,
No. 4:18-CV-04330, 2024 WL 1769325 (S.D. Tex. Apr. 24, 2024) ................................. 9

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113, 141 S. Ct. 1951, 210 L. Ed. 2d 347 (2021) ........................................... 2, 4

*In re BP p.l.c. Sec. Litig.*,
No. 10-MD-2185, 2014 WL 2112823 (S.D. Tex. May 20, 2014) .................................... 10

*In re Cassava Scis., Inc. Sec. Litig.*,
No. 1:21-CV-00751-DAE, 2025 WL 2327101 (W.D. Tex. Aug. 12, 2025) .................... 2, 8

*In re Concho Res., Inc.*,
No. 4:21-CV-2473, 2025 WL 1040379 (S.D. Tex. Apr. 7, 2025) ........................... 5, 6, 8, 9

*In re FibroGen Sec. Litig.*,
No. 21-CV-02623-EMC, 2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) ............................ 6

*Ind. Pub. Ret. Sys. v. AAC Holdings., Inc.*,
2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) .............................................................. 10

*Loritz v. Exide Techs*,
No. 2:13–CV–02607–SVW–E, 2015 WL 6790247 (C.D. Cal. July 21, 2015) .................. 9

*Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) .......................................................................................... 3

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ........................................................................................ 8

*Rougier v. Applied Optoelectronics, Inc.*,
   No. 4:17-CV-02399, 2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ................................... 8, 10

*Schneider v. Natera, Inc.*,
   No. 1:22-CV-00398-DAE, 2025 WL 369243 (W.D. Tex. Jan. 28, 2025)................................. 5

**INTRODUCTION**

Defendants oppose class certification asserting they have rebutted the fraud on the market presumption of reliance, and that Plaintiff fails to put forth a damages methodology that aligns with his theory of liability. Having conceded market efficiency, Defendants bear the burden of rebutting the presumption that their misstatements had an impact on CS Disco's share price. Defendants try to show a mismatch between their false statements and the corrective disclosure, but fail to do so. Indeed, they do not really try. Instead, they argue that other information disclosed by Defendants and third party analysts before and during the class period adequately warned Defendants of the negative information concealed by their misstatements. But the Supreme Court has already held that such "truth on the market" arguments are inappropriate at class certification. Moreover, the risk-related information Defendants point to do not disclose the specific information concealed by the misstatements and revealed by their corrective disclosure – the dependence of CS Disco's performance on a small number of seven figure per quarter Review projects. Defendants also attempt to challenge price impact by pointing to internal CS Disco information that Defendants' expert claims shows there was no "informational asymmetry" between Defendants and the public. This is just a fancy way of denying they made false statements of material fact (*i.e.* defrauded plaintiff).  But the Court already denied Defendants' motion to dismiss. That ship has sailed.  And Defendants point to no case law where any court has ever considered this argument on class certification. It is no wonder – information that Defendants themselves acknowledge was not made public during the class period cannot have impacted the price of CS Disco's publicly traded stock. Moreover, Defendants' expert only reviewed a narrow set of documents, and failed to identify information in those very documents that shows any asymmetry in information between Defendants and the public.

Defendants' damages argument fairs no better. It largely relies on Defendants' ineffective

1

arguments made on price impact, and on the assumption that the alleged corrective disclosure was not actually corrective. But this misunderstands the scope of the inquiry into damages at class certification. Plaintiff need not prove that their theory of liability will be successful on the merits, only that, if successful, Plaintiff will be able to calculate damages class-wide based on that theory of liability. And on that score, Defendants raise no real objection.

## ARGUMENT

**I.  DEFENDANTS FAIL TO REBUT THE PRESUMPTION OF PRICE IMPACT**

**A.  Because they Concede that CS Disco Stock Traded in an Efficient Market During the Class Period, Defendants Bear the Burden of Proving a lack of Price Impact**

Plaintiff's opening brief showed that all the *Basic* requirements for a fraud on the market presumption of reliance are satisfied. Opening Brief at 10-16. Defendants concede that the market for CS Disco stock was efficient during the proposed Class Period. This mandates the Court grant Plaintiff the fraud on the market presumption of reliance satisfying the Rule 23 predominance requirement. *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988). Defendants can rebut the fraud on the market presumption only by proving the misrepresentations had **no impact at all** on CS Disco's share price. *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 119, 141 S. Ct. 1951, 210 L. Ed. 2d 347 (2021). "Defendants thus have the daunting task to prove by a preponderance of the evidence that the publicly known statement had no price impact." *In re Cassava Scis., Inc. Sec. Litig.*, No. 1:21-CV-00751-DAE, 2025 WL 2327101, at *16 (W.D. Tex. Aug. 12, 2025) (Ezra, J.) (internal marks omitted).

**B.  Defendants Cannot Show Lack of Price Impact Because of the Close Link Between the Information Omitted from the Misstatements and the Information Disclosed in the Corrective Disclosure**

Defendants clumsily attempt to rebut the fraud on the market presumption of reliance by asserting there is a mismatch between the false statements and the corrective disclosure. *Goldman*

*Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 123, 141 S. Ct. 1951, 1961, 210 L. Ed. 2d 347 (2021) (The "inference—that the back-end price drop equals front-end inflation—starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure."). First, Defendants' attempted rebuttal fails because there is a close match between the false statements and the corrective disclosures, supporting an inference of back-end price impact. Second, "a corrective disclosure need not 'precisely mirror' the misrepresentation". *Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, No. CV H-21-2045, 2023 WL 6300569, at *7 (S.D. Tex. Sept. 27, 2023), *leave to appeal denied,* No. 23-90035, 2023 WL 8794620 (5th Cir. Nov. 17, 2023) *quoting Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009). "The two need only be 'related' or 'relevant' to one another." *Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *7 *quoting Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014). In *Cabot*, the District Court rejected Defendants' price impact argument where a reasonable observer would have understood the corrective disclosure to have revealed the falsity of earlier misrepresentations. 2023 WL 6300569, at *12. Here, similarly, there is a close match between the alleged misstatements and the corrective disclosures. Judge Ezra characterized Plaintiff's allegations as alleging that Defendants "told investors that when customers increased their revenues to seven figures it represented a stable revenue source but in reality … several of its seven figure customers were driven by large Review projects" and that:

> According to Plaintiffs, [the alleged mis]statements were misleading because they failed to disclose that revenues were materially impacted by a small number of large Review matters that were not part of ongoing and continuous legal department spends. Plaintiffs further argue [the alleged mis]statements are misleading because they falsely told investors that customers reached a mature stable spend, when in reality several of its largest customers at that time were spending unusually high amounts on Disco's Review product due to the existence of unusually large litigation matters.

Dkt. No. 69 at 19. Both the misstatements and corrective disclosures concern the nature of CS Disco's revenues from large customers. The match between the subject matter of the alleged misstatements and omissions and the corrective disclosure led Dr. Nye to conclude "that the subject of the alleged misstatements and omissions—*i.e.*, the undisclosed risk that Disco's customer spend growth was driven by only a handful of large Review projects—was clearly the root cause of the stock price" decline on August 12, 2022. Rebuttal Report of Zachary Nye ("Nye Rebuttal Report") attached as Exhibit A to the Declaration of Jonathan Stern ("Stern Dec.") ¶44.

Defendants invoke the *Goldman* mismatch doctrine, but do not attempt to apply it. It is not hard to see why, as the facts in *Goldman* are distinct from those here. In *Goldman* the Supreme Court found that the Second Circuit failed to consider whether there was a mismatch between generic alleged misstatements like "Our clients' interests always come first" and "Integrity and honesty are at the heart of our business" and disclosures of specific conflicts of interest with respect to a single transaction. *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 120, 141 S. Ct. 1951, 1959, 210 L. Ed. 2d 347 (2021). Neither Defendants nor their expert attempt to perform the sort of mismatch analysis contemplated by *Goldman.*

Rather than advance the mismatch arguments allowed to them by *Goldman*, Defendants instead advance a "truth on the market" argument that is barred to them, at this stage, by *Amgen*. Defendants invite error by ignoring the Supreme Court's holding that a defendant cannot rebut the presumption of reliance through a so-called "truth on the market" defense that points to information outside the challenged statements or corrective disclosure claims that rendered the allegedly misleading statements immaterial, and thus didn't mislead the market. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 480, 133 S. Ct. 1184, 1203, 185 L. Ed. 2d 308 (2013). In light of *Amgen*, multiple courts in this Circuit have recognized that arguments of the

4

sort Defendants advance are forbidden. "[A] rose by any other name would smell as sweet, and a truth-on-the-market defense by any other name goes to materiality. As such, whether the TCF reports exposed the markets to the 'truth,' or the Hindenburg Report was corrective, is a matter for resolution at a later date after full briefing on the issue. " *Schneider v. Natera, Inc.*, No. 1:22-CV-00398-DAE, 2025 WL 369243, at \*8 (W.D. Tex. Jan. 28, 2025), *report and recommendation adopted,* No. 1:22-CV-398-DAE, 2025 WL 880256 (W.D. Tex. Mar. 21, 2025). Tellingly, *Concho*, which Defendants cite, also rejects this approach. "While the 'totality of the circumstances' or 'context' may be important eventually, this approach at the class certification stage would conflict with the Supreme Court's decision in Amgen". *In re Concho Res., Inc.*, No. 4:21-CV-2473, 2025 WL 1040379, at \*12 (S.D. Tex. Apr. 7, 2025).

Even if Defendants' argument was proper at this stage, it falls flat for the simple reason that it does not address the facts that Defendants concealed. Defendants point to risk warnings that relate to general revenue fluctuations and customer concentration, ignoring that the allegations in this case relate to CS Disco's concealment of the impact on its revenues of a single digit number of seven figure per quarter Review matters. As Dr. Nye notes, Defendants never point to any statement prior to August 11, 2022 that discloses this fact, because they cannot. As Dr. Nye notes, "[t]he disclosures [Dr. Eisfeldt] cites merely describe general business risks associated with usage-based contracts and customer concentration.  They did not disclose the specific, adverse facts alleged here regarding the unusually large, one-time Review matters that were not expected to recur, much less the broader allegations regarding Disco's purported revenue stability, visibility, and growth prospects." Nye Rebuttal Report ¶8.  Dr. Eisfeldt admitted in deposition testimony that she never analyzed the risk from a customer's spend being concentrated in a very large matter. Stern Dec. Ex B. Eisfeldt Tr. At 39:19-40:23. Worse yet, Dr. Eisfeldt did not appear to understand

that an individualized "matter", in the legal services context, refers to something different than a customer's total spending. At her deposition, Dr. Eisfeldt incorrectly claimed that a "seven figure Review matter" referred to "[a] client having seven figures of Review spend in a quarter." Stern Dec. Ex. B, Eisfeldt Tr. At 55:14-18. She therefore wholly failed to understand that the small number of seven figure review matters represented a much more acute risk than merely having several large customers. Nor did Dr. Eisfeldt appear aware of all of the challenged false statements, stating that one "did not seem controversial." Nye Report ¶30, n. 91.

Nor can Defendants' argument that CS Disco's revised guidance is not a corrective disclosure rebut an inference of price impact, because Plaintiff does not and has never contended that the revised guidance, standing alone, constituted a corrective disclosure. Rather, it is the guidance taken together with the revelation that Disco's revenues materially relied on a small number of large Review projects that constituted a corrective disclosure. *Concho*, which Defendants cite, refutes their argument on this score. The *Concho* court held that a mismatch might have existed under *Goldman* if the corrective disclosure consisted of financial results standing alone, but there was no mismatch as to statements about the company's manufacturing process because the corrective disclosure also discussed weaknesses in that process. *Concho Resources*, 2025 WL 1040379, at *16. Similarly, *FibroGen* stands for the proposition that information that did not exist at the time of the misstatement cannot, standing alone, constitute a corrective disclosure, but the revised guidance in this case does not stand alone, but instead was accompanied by the revelation that several of CS Disco's large customers' revenues each came from a single large review matter. *In re FibroGen Sec. Litig.*, No. 21-CV-02623-EMC, 2024 WL 1064665, at *12 (N.D. Cal. Mar. 11, 2024).

Defendants' argument that the corrective disclosure was a "materialization of a disclosed

6

risk" fares no better. First, Plaintiff could find no cases where a court used that phrase in connection with an analysis of price impact at class certification, let alone in denying certification. It is no wonder, then, that Defendants cite no relevant case law in support of this proposition. Second, it ignores the actual allegations of the case, which relate specifically to the failure to disclose the impact of seven figure review projects, not general risks to revenues, Disco's revenue model, or customer concentration. Moreover, the risk that Disco disclosed, customer concentration, did not actually materialize. As Dr. Nye notes, Camara stated on August 11, 2022 that Disco's downward revision of its projections was *not* due to lost customers, so the disclosed risk from customer concentration did not in fact materialize at the end of the class period. Nye Rebuttal Report ¶20.

Finally, Camara's statement at the August 11, 2022 earnings call that revenues in Q2 2021 "benefited from a small number of large reviews" does nothing to sever the link between the misstatements and the corrective disclosures because it also closely matches the subject matter of the misstatements made on September 3, 2021.

### C.     Defendants' Internal Projections Are Irrelevant to the Price Impact Analysis

Defendants', and their expert's, reliance on non-public internal CS Disco projections is wholly irrelevant to the question of whether their public misstatements and corrective disclosures had an impact on the price of publicly traded CS Disco common stock. Defendants nowhere suggest a mechanism by which Disco common stock could have been impacted by information that, according to Defendants themselves, is not only not public, but highly confidential. Worse yet, Dr. Eisfeldt was wholly unaware that the internal documents she examined were not publicly available. Moreover, as Dr. Nye notes, Dr. Eisfeldt improperly assumes the accuracy and reliability of the materials she received from Defense counsel, and Dr. Eisfeldt has conceded at deposition "that: (i) she has not reviewed all of Defendants' internal data and communications; (ii) she 'didn't get a specific forecasting model,' and does not know if or how large Review matters factored into

7

the Company's projections; and (iii) she does not have 'any great level of detail' regarding how Disco derived its internal projections." Nye Rebuttal Report ¶27.

Moreover, although discovery is ongoing, it is already apparent that there was an informational asymmetry between Defendants and the public. ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ Therefore, the existence of an asymmetry is apparent from the documents Defendants have already produced.

## II.    PLAINTIFFS CAN CALCULATE CLASSWIDE DAMAGES

To satisfy the Supreme Court's *Comcast* standard, plaintiffs at class certification must "simply … propose a methodology for calculating damages that corresponds to their theory of liability and can be applied class-wide." *In re Concho Res., Inc.*, No. 4:21-CV-2473, 2025 WL 1040379, at *20 (S.D. Tex. Apr. 7, 2025) *citing Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013). Plaintiffs need not provide damages calculations. Dr. Nye proposes using an out of pocket damages model to calculate classwide damages. "Many courts recognize out-of-pocket damages models as an accepted way to calculate damages on a classwide basis in securities fraud class actions." *In re Cassava Scis., Inc.*, 2025 WL 2327101, at *18; *see also Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-CV-02399, 2019 WL 6111303, at *18 (S.D. Tex. Nov. 13, 2019), *report and recommendation adopted,* No. 4:17-CV-2399, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019) (out of pocket "method for demonstrating class-wide damages is consistent with its fraud on the market theory of liability"); *In re Concho Res., Inc.*, No. 4:21-CV-2473, 2025 WL 1040379, at *20 (S.D. Tex. Apr. 7, 2025) (certifying class where expert proposes to measure damages as a class member's purchase price less artificial inflation) *Rooney*

8

*v. EZCORP, Inc.*, 330 F.R.D. 439, 451 (W.D. Tex. 2019) (finding out of pocket measure of damages sufficient to satisfy *Comcast*); *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-04330, 2024 WL 1769325, at *12 (S.D. Tex. Apr. 24, 2024), *report and recommendation adopted sub nom. Edwards v. McDermott Int'l, Inc*, No. 4:18-CV-04330, 2024 WL 3085177 (S.D. Tex. June 21, 2024), *aff'd sub nom. Nova Scotia Health Employees' Pension Plan v. McDermott Int'l, Inc.*, No. 24-20326, 2025 WL 2814735 (5th Cir. Oct. 3, 2025) (same). While Defendants cite several inapposite cases, the attached Exhibit C lists 95 cases where courts found out-of-pocket damages models identical to Dr. Nye's satisfied Comcast's requirements for class certification.

Defendants fault Plaintiff for not attempting to calculate damages on each day of the class period yet cite no cases where a court required a plaintiff to make such a calculation at class certification or otherwise. As Dr. Nye notes, Dr. Eisfeldt offers no basis for her similar opinion. Nye Rebuttal Report ¶60.  Defendants' argument boils down to an insistence that because the disclosures were not actually corrective, Plaintiff cannot establish damages. But while Defendants are entitled to assert, on the merits, that Plaintiff's alleged corrective disclosure did not correct any misstatements, the question at certification is whether Plaintiff's damages model *matches* Plaintiff's theory of liability. Because Defendants' argument is premised on rejecting that theory, it is improper here. Nor does *Loritz* warrant rejecting Plaintiff's expert report on damages, as in that case plaintiffs failed to offer expert testimony in their opening brief and on reply failed to address issues not relevant here, such as the presence of multiple corrective disclosures. *Loritz v. Exide Techs.*, No. 2:13–CV–02607–SVW–E, 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015).

Defendants' attempt to recast the allegations of the Complaint, which do not even plead a materialization of a concealed risk theory, as proceeding under that theory. Courts have consistently rejected any attempt to so re-cast a plaintiff's theory. *In re Concho Res., Inc.*, No.

4:21-CV-2473, 2025 WL 1040379, at *19 (S.D. Tex. Apr. 7, 2025); *Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-CV-02399, 2019 WL 6111303, at *18 (S.D. Tex. Nov. 13, 2019), *report and recommendation adopted,* No. 4:17-CV-2399, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019). Defendants focus on one statement at Plaintiff's expert's deposition noting that the reduced guidance on August 11, 2022 could be seen as a materialization of a risk that was concealed. But Defendants, as they do in their price impact argument, ignore the fact that the thrust of Plaintiff's case is that Defendants' admission that revenues were dependent on a small number of large Review projects corrected Defendants' misstatements. The fact that this corrective disclosure, and accompanying downward revision in financial projections, also revealed to investors that CS Disco's revenue performance was riskier than previously understood, does not put this case into the narrow category of cases that the Fifth Circuit in *BP* identified as requiring individualized damage inquiries under *Comcast*. The two cases Defendants cite are distinct from the facts here. The Court in *BP* denied certification because plaintiffs there sought to deviate from the out-of-pocket measure of damages. *In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2014 WL 2112823, at *12 (S.D. Tex. May 20, 2014) ("*BP II*"); *compare Applied Optoelectronics*, 2019 WL 6111303, at *16 (certifying a class and distinguishing *BP II*, noting that "[u]nlike the damages model in this case, it was undisputed in *BP II* that the pre-explosion subclass did not seek out-of-pocket damages based on the artificial inflation of the stock price."). *AAC* was based on defendants' argument, credited by the court, that out of pocket damages was inappropriate because different investors with different risk appetites would have valued the risk differently, an argument Defendants did not present here. *Ind. Pub. Ret. Sys. v. AAC Holdings., Inc.*, 2023 WL 2592134, at *24-25 (M.D. Tenn. Feb. 24, 2023).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion.

Dated: November 17, 2025

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Jonathan Stern
Jonathan Stern (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jstern@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

-and-

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Phone: (214) 744-3000
Fax: (214) 744-3015
Email: jkendall@kendalllawgroup.com

*Liaison Counsel for Lead Plaintiff and the Class*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing document was served on all counsel of record registered via the Court's CM/ECF electronic filing system.

/s/ Jonathan Stern
Jonathan Stern