**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| LYNN GAMBRILL, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 1:24-cv-00028-DAE |
| CS DISCO, INC., KIWI CAMARA, and MICHAEL LAFAIR, | § § § | |
| *Defendants.* | § § | |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Plaintiff's Motion to Compel concedes that "the allegations in the Complaint turn on Defendants' knowledge of the contribution of a ***few*** large review matters to CS Disco's revenue." Mot. at 1 (emphasis added). Nonetheless, Plaintiff asks this Court to order DISCO to notify—at significant risk to its business—thousands of customers who did not have "large review matters." Plaintiff's Motion is wrong on the law and facts, and it should be denied.

Following extended good faith negotiations and Defendants' analysis of the significant burden and potential harm of notifying its customers, balanced against Plaintiff's failure to identify the purported relevance of the requested customer identities, Defendants offered a practical compromise: (1) notify and seek consent from any customer who had one of the "few large review matters" that Plaintiff claims his allegations turn on; and (2) provide an overlay of anonymized ID numbers for all other large (seven-figure) revenue customers, regardless of whether the customer used the Review product. Plaintiff refused this compromise and instead demands that the Court compel DISCO to engage in the wholly unreasonable exercise of notifying or seeking contractually required consent from thousands of customers, who are entirely irrelevant to this matter.

Defendants remain committed to producing relevant and responsive information in this litigation. But Plaintiff should not be permitted to abuse the discovery process by wading into commercially sensitive areas of DISCO's legal business, without any showing of relevance, proportionality, or necessity. Defendants respectfully request the Court deny Plaintiff's Motion.

## I.    BACKGROUND

DISCO is an e-discovery vendor that offers litigation management services to companies and law firms. In this putative securities class action lawsuit, Plaintiff claims that Defendants misled investors by suggesting DISCO's seven-figure revenue Review customers represented a "stable" revenue source while failing to disclose that the "true drivers" of revenue growth were a small number of "one-off," "seven-figure" projects within DISCO's Review product line. FAC ¶¶ 51, 53. In response to 24 RFPs, Defendants agreed to produce responsive documents to all RFPs other than the handful that pertained to claims that had been dismissed from the case and have since produced over 2,000 documents. *See* Pl. Ex. B. As Plaintiff acknowledges, at that time, Defendants' discovery responses asked to meet and confer on the extent to which customer names are implicated in the document productions.[1] *See* Mot. at 2, Ex. B. Defendants have been forthcoming and clear on burdens imposed by Plaintiff's demand that DISCO produce customer information.[2]

Promptly after Defendants served their RFP responses, the parties conferred extensively on this issue and DISCO spent weeks compiling every customer contract to review notice and

---

[1] Plaintiff makes much of the fact that his discovery was propounded in April and that Defendants did not review the contract provisions until August, but as Plaintiff is well-aware, the parties agreed to stay any deadlines to respond to that discovery until June 25, 2025.

[2] Plaintiff mischaracterizes the parties' negotiations that ensued thereafter in several material respects. For example, Defendants explained that they were working on a customer name proposal but were producing documents with redactions in the interest of getting them to Plaintiff sooner.

disclosure provisions. After receiving over 2,500 contracts, defense counsel spent significant time reviewing and analyzing the contracts' various (and varied) customer notice provisions. *See* Corkery Decl. ¶¶ 3-11. During the September 29 meet and confer, Defendants re-iterated the lack of relevance of non-seven-figure Review customer names and explained, in detail, the unique burdens associated with obtaining consent from all of DISCO's customers. Specifically, Defendants explained:

(1)  There are over 2,500 customer contracts related to DISCO engagements during the Class Period, with unique notice and consent provisions;

(2)  The contracts are oftentimes limited to a specific litigation matter thus necessitating a careful review of the timeframe and matter implicated to identify the governing language for a customer name reference across thousands of produced documents;

(3)  The majority of customer contracts appear to require notice to a specific person via a precise process (e.g., certified mail, etc.);

(4)  The customer contracts usually require that DISCO cooperate with the customer to prevent or limit any such disclosure if requested; and

(5)  The amount of time to identify the controlling provision, provide notice, secure consent, and wade through thousands of documents and customer names to proceed according to contractual terms would take many months to complete and unnecessarily interfere with and strain customer relations.

*See* Corkery Decl. ¶¶ 6, 12-13; Lafair Decl. ¶ 4; Pl. Ex. C. Four days later, Defendants proposed a mutually agreeable solution to ensure that Plaintiff has the requested information, while avoiding undue burden that results from binding agreements. That is, Defendants agreed to seek consents for any customer who spent seven figures on Review in any quarter (i.e., any customers who had one of the "few large review matters" on which Plaintiff bases his claims) and to go a step further by providing anonymized identification numbers for all other customers who generated seven-figure revenue, even if the customer never used the Review product. Mot. at 1, Ex. C.

Plaintiff rejected this reasonable offer with a two-sentence conclusory response that

"customer names are clearly responsive" and "[w]itholding customer names would significantly burden Plaintiff's ability to conduct discovery and prepare for trial." Pl. Ex. C at 8.  In response, Defendants again underscored Plaintiff's failure to explain why Defendants' proposed solution was insufficient, why the names of customers other than seven-figure Review customers would be relevant, or how Plaintiff's ability to conduct discovery or prepare for trial would be hindered in any way.  *Id*. at 6-7.  On October 28, Plaintiff put forth his sole "compromise" where Defendants would be required to disclose the name of ***any customer*** who generated ***any amount*** of revenue (even as little as $1) on Review; ***any customers*** who spent over $100,000 ***on Software*** (a product not at issue) in any quarter during the class period; and ***any customer*** mentioned in any responsive document, without limitation, which essentially implicates every DISCO customers during the Class Period.  *Id*. at 5-6.  Plaintiff's "compromise" effectively requires notice to and consent from ***thousands*** of irrelevant customers.

## II.   ARGUMENT

Plaintiff seeks disclosure of every single customer name in every document Defendants produce without regard to (i) the lack of relevance and significant burdens associated with such disclosure, (ii) the contractual and ethical obligations DISCO owes to its customers, and (iii) the fact that Defendants have offered a practical compromise to provide Plaintiff the information he needs without compromising DISCO's confidential and privileged business relationships and information.  The information Plaintiff seeks is irrelevant and not proportional to the needs of the case and Plaintiff has not established why Defendants' proposed compromise is insufficient.

### A.   Plaintiff's Demand for Irrelevant Customer Information Presents Significant Burdens and Is Not Proportional to the Needs of the Case.

Plaintiff insists that DISCO identify thousands of customers by name, but fails to articulate the relevance of any customer name beyond the seven-figure Review customers at issue.  *See* Mot.

at 1.  Given the strained (at best) relevance of these customers' identities, Plaintiff's demand for virtually all DISCO customer identities ignores the procedural burden and the competitive harm that such disclosure would cause.

Plaintiff's demand implicates thousands of individual customer contracts, each with unique notice provisions governing disclosure of customer data.  The vast majority of these customer contracts appear to require DISCO to provide notice to and secure consent from most customers before disclosing any customer information, including names.  *See* Corkery Decl. ¶ 11.  Across these various engagement and master service agreements, the steps for providing notice, the precise case matter subject to those steps, and the form and type of consent vary.  *See* Corkery Decl. ¶ 12 (providing exemplar provisions that require express consent or that require DISCO working with the client on the exact content and scope of disclosure).

For the more than 2,000 customer names referenced in Defendants' document productions, Plaintiff wants DISCO to identify the governing contract among thousands of potential DISCO customer contracts, provide notice to the appropriate contact by the designated process, and either confirm the extent to which the customer intends to resist or limit such disclosure, if at all, or else await consent from each customer.  Moreover, given that some customers entered into separate contracts for each matter engagement, Defendants would be required to engage in a labor-intensive and judgment-prone process of trying to identify which legal matter the client reference concerns to trace it back to the governing contract.  This process would take ***at a minimum*** several months. *See* Corkery Decl. ¶ 13.

Not only would this undertaking impose undue burden and expense on DISCO but it would also present unique challenges in light of the services DISCO offers its customers.  By the very nature of its business, DISCO acts as an agent of attorneys, law firms, and in-house attorneys who

retain and work with DISCO in connection with privileged and confidential legal matters, and its business depends on maintaining the same confidentiality standards that apply to these legal clients. In fact, both federal and state ethical rules dictate that the identity of a client constitutes confidential information and cannot be disclosed absent client consent. *See* Model Rules of Pro. Conduct R. 1.6; Texas Disciplinary Rule of Professional Conduct Rule 1.05.[3] And even soliciting customer consent would risk harm to DISCO's business model as it jeopardizes the ongoing client relationship. *See* Lafair Decl. ¶ 4. Additionally, producing all customer names to Plaintiff's counsel raises conflict of interest concerns, as Plaintiff's retained counsel, the Rosen Law Firm, is engaged in multiple litigations against at least one (and likely more) of DISCO's customers. *See* Corkery Decl. ¶ 14. Disclosing that customer's name with information surrounding the volume, revenue, timing, and scope of legal work it had DISCO perform introduces collateral conflict issues that the parties' Stipulated Protective Order cannot address. *See id*.

The burden to DISCO of jeopardizing (and indeed potentially breaching) its obligations to all of its customers far outweighs any potential relevance of the names of any customers.

**B.      Federal Law Supports Redacting Information Under These Circumstances.**

Courts regularly permit parties to redact customer names where, as here, agreements require notice to numerous customers and such burdens outweigh the relevance. *See* Fed. R. Civ. P. 26(b)(1). For example, in *Lubrizol Corp. v. International Business Machines Corp*., the court denied a motion seeking to compel the defendant to remove redactions from all customer names

---

[3] Plaintiff contends "Defendants were not engaged in the practice of law" (Mot. at 10) but ignores the fact that DISCO's entire business is facilitating review of privileged information. Plaintiff's reliance on *Barback v. Fisher* does nothing to help his point, as that court held only that the Louisiana Rules of Professional Conduct "[do] not preclude an attorney from producing evidence in a judicial proceeding" where the defendants "placed at issue information relating to their representation of certain clients[.]"  2022 WL 965914, at *6 (M.D. La. Mar. 30, 2022).

other than the four customers at issue because the names of "over a hundred other clients" were irrelevant, and the defendant would "need to determine whether contractual confidentiality provisions from a number of different contracts apply, and [then] comply with each contract's specific notification provisions." 2023 WL 5103944, at *3-4 (N.D. Ohio Aug. 9, 2023). As the court recognized:

> [Defendant] has adequately demonstrated [] it would be unduly burdensome [] to reproduce unredacted versions of the disputed documents … [as defendant] represents that some of the disputed documents include references to over a hundred other [] clients … [and] it has confidentiality agreements with some of its clients that would require it to provide notice to those clients before it could produce unredacted versions of the disputed documents.

*Id.* at *3. Similarly, this Court denied a motion to compel the identification of customer names on grounds that such disclosure was not necessary to the plaintiff's claims and because the customers' identities constituted the defendants' trade secrets. *See Nat. Dynamics, LLC v. Calm Nat. Ltd.*, 2016 WL 11584909, at *3 (W.D. Tex. Oct. 14, 2016) (Lane, J.), *report and recom. adopted*, 2016 WL 11585184 (W.D. Tex. Nov. 1, 2016). The Court held that the defendants "complied with the requests by producing their invoices with only the names of their customers redacted." *Id.* at *4[4]

**First, none** of Plaintiff's cases or arguments address the issue here—namely, unique burdens presented with providing contractually obligated notice to thousands of customers who are not relevant to the claims of the case, or whose disclosure implicates privilege, ethical, and confidentiality concerns. *See* Mot. at 7-8. He instead relies on cases where only the customer identities that were directly relevant to the dispute were compelled and the producing party (as Defendants **have already offered** to do here) and did not identify any overriding or unique burdens

---

[4] Plaintiff's effort to distinguish *Nat. Dynamics* on the grounds that customer names in that case "constituted the Defendants' trade secrets" (Mot. at 8) is unavailing because the identities of DISCO's customers are equally, if not more, sensitive than the ones at issue in *Nat. Dynamics*.

associated with such disclosure.  For example, in a patent infringement suit, the court compelled production of customer identities **only** "with respect to the accused … products at issue."  *TNA Australian Pty Ltd. v. PPM Techs., LLC*, 2018 WL 2010277, at *1, 16 (N.D. Tex. Apr. 30, 2018). As in *TNA*, Defendants here **agreed** to seek consent to disclose the names of the seven-figure Review customers at issue.  And, in *A+ Auto Service, LLC v. Republic Services of South Carolina, LLC*, the court compelled disclosure of customer names where defendants' primary fear was that plaintiff's counsel would abuse the information, a concern the court resolved by prohibiting plaintiff's counsel from using the customer information outside the lawsuit.  2022 WL 2903314, at *2 (D.S.C. July 14, 2022).  Here, the very disclosure of customer names would cause irreparable harm to DISCO's business and customer relations, which cannot be remedied by court order.[5]

**Second**, Plaintiff argues at length that "NDAs … cannot override a party's discovery obligations" and the "mere existence of NDAs is no bar to discovery."  Mot. at 6.  Yet Defendants' argument is different.  Defendants have been clear that the various customer contracts at issue contain unique notice provisions, compliance with which would present demonstrable burdens given the nature of DISCO's business.  This renders Plaintiff's five cases defining confidential information entirely inapt here.  *See id.* (citing cases that did not require consent).

**Third**, Plaintiff's waiver argument makes no sense.  Contrary to Plaintiff's claim that Defendants "specifically stated that they would produce documents requesting customer identities" (Mot. at 2), Defendants expressly "reserve[d] their right to identify each client by a

---

[5] *See also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2018 WL 11268486, at *3-4 (M.D. Fla. Aug. 2, 2018) (compelling disclosure of customer names that were **relevant** to claim for patent infringement damages where producing party did not raise privilege or ethical concerns); *Innovative Commc'n Sys., Inc. v. Innovative Computing Sys., Inc.*, 2014 WL 3535716, at *4 (W.D. Tex. Jul. 16, 2014) (same); *Tama Plastic Indus. v. Pritchett Twine & Net Wrap, LLC*, 2013 WL 275013, at *6 (D. Neb. Jan. 24, 2013) (holding party could not redact on **relevance** grounds and "generalized fear of a mistake or inadvertent disclosure").

unique letter, symbol, number, or the like." Pl. Ex. B at 6. Likewise, Plaintiff's claim that the Stipulated Protective Order governs the treatment of customer names (Mot. at 9-10) misses the point. The Stipulated Protective Order does not determine the scope of permissible discovery in a case, let alone determine that sensitive customer information is discoverable; it simply governs the process for designating documents as confidential, challenging those designations, and filing confidential documents. *See* ECF No. 83 ¶ 5 (the receiving party "agrees to inform the producing party … before filing [customer] information" on the docket). No modification to that Order is necessary in denying Plaintiff requested relief here.

*Fourth*, Plaintiff's reliance on a few customer names in DISCO's IPO Registration Statement, Mot. at 8, is of no effect. DISCO followed the necessary consent procedures and obtained consent, Lafair Decl. ¶ 5, a process that did not implicate the same burden challenges here. And in any event, the mere identification of select customer names is markedly different from consent to disclose client information in internal and confidential communications concerning a customer's legal matters and needs. Plaintiff's related observation that DISCO's status as a "publicly traded company with hundreds of employees" (Mot. at 6) justifies his sweeping demand fares no better. Being a public company does not relax the discovery standard, and Plaintiff identifies no case law that suggests that public companies are held to a different standard. Likewise, Plaintiff's argument that Defendants' expert "relied on documents that listed each customer's spending on a month-by-month basis" (*id*. at 5-6) actually supports Plaintiff's position because that expert received only the ***exact same*** anonymized data that Plaintiff received—data which Defendants' expert had no issues interpreting, despite the anonymized nature.

Accordingly, contrary to Plaintiff's misguided arguments, Defendants have shown specifically how the discovery is overly broad, burdensome or oppressive.

### C. Defendants' Proposed Solution Provides Plaintiff With the Information He Claims Is Relevant.

Plaintiff insists that DISCO identify thousands of customers by name but has never articulated why he is entitled to such intrusive discovery. *See* Fed. R. Civ. Proc. 26(b) (discovery must be relevant and proportional to the needs of the case). Plaintiff's surviving claims relate to only DISCO's seven-figure Review customers and the revenue attributable to those customers during the class period. Discovery into DISCO's customer base should therefore be limited (at most) to only those seven-figure Review customers. Defendants, in good faith, have proposed seeking consent to disclose the names of any customer who spent seven figures on Review in any quarter and have also agreed to go beyond that by providing an anonymized ID number for all other seven-figure revenue customers, regardless of the product used and despite the irrelevance of these customers. This would provide Plaintiff with all the information he needs while maintaining the contractual and confidentiality obligations DISCO owes its customers, all of whom are engaged in privileged and highly confidential matters.

Plaintiff claims he needs the specific names of every DISCO customer because he will not be able to assess whether DISCO had "customers who were not necessarily large Review customers" but who had "dozens or hundreds of matters" with DISCO, or whether "customers and their wallet sizes are accurately described in Defendants' statements." Mot. at 5. But Plaintiff already has this information, which is contained in spreadsheets reflecting the revenue generated by each Review matter during the class period (which would allow him to determine how many matters a Review customer had) and spreadsheets detailing each customer's revenue contributions across the months and quarters of the class period. It is unclear how the use of anonymized ID

numbers to identify customers, as opposed to actual names, would hinder Plaintiff's ability to analyze the information he claims to need.[6]  In short, Plaintiff has never explained, let alone established, what difference it makes to his case whether a customer is identified as "Customer 003" or with the name of the customer itself.

## III.    CONCLUSION

For these reasons, this Court should deny Plaintiff's Motion to Compel.

Dated: November 21, 2025

Respectfully submitted,

By: */s/ Tijana Brien*
Tijana Brien
Admitted *Pro Hac Vice*
tbrien@cooley.com

Patrick E. Gibbs
Admitted *Pro Hac Vice*
pgibbs@cooley.com
Brett H. De Jarnette
Admitted *Pro Hac Vice*
bdejarnette@cooley.com
Ashley Kemper Corkery
Admitted *Pro Hac Vice*
acorkery@cooley.com
**COOLEY LLP**
3175 Hanover Street
Palo Alto, California 94304-1130
(650) 843-5000 (phone)
(650) 849-7400 (fax)

Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com

---

[6] Plaintiff cites to Exhibit D as an "illustration of how severely Defendants' excessive redactions" would restrict Plaintiff's ability to litigate this case (Mot. at 5) but Defendants have identified the customer names referenced in the email with anonymized identifiers ("Customer Name 003" and "Customer Name 028"), and thus, Plaintiff is able to link these (and other) discussions about Customers 003 and 028 to their revenue contributions across the class period (and across all product lines) and what information Defendants internally possessed about these customers.

Hailey L. Suggs
Texas Bar No. 24113497
hsuggs@gdhm.com
**GRAVES, DOUGHERTY, HEARON & MOODY, P.C.**
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5764
(512) 480-9908 (Fax)

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all counsel of record on November 21, 2025, via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Tijana Brien*