**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LYNN GAMBRILL, Individually and On Behalf of All Others Similarly Situated, | § § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | NO. 1:24-cv-00028-DAE |
| CS DISCO, INC., KIWI CAMARA, and MICHAEL LAFAIR, | § § § § § | |
| *Defendants*. | § | |

**ASHLEY K. CORKERY DECLARATION IN SUPPORT OF**
**DEFENDANTS' OPPOSITION TO PLAINTIFFS MOTION TO COMPEL**

I, Ashley K. Corkery, hereby declare as follows:

1.      I am an attorney at the law firm of Cooley LLP and am counsel of record for Defendants CS Disco, Inc. ("DISCO"), Kiwi Camara, and Michael Lafair in this action.  Unless otherwise stated, I have personal knowledge of the following facts and if called to testify as a witness could and would testify competently thereto.

2.      In connection with fulfilling discovery obligations in this case, I oversaw the assessment of DISCO's contractual obligations, if any, before disclosing information related to DISCO's customers in the course of discovery.

3.      Between August and September 2025, DISCO identified and compiled all relevant DISCO customer contracts that it could locate following a reasonable and diligent search.

4.       After de-duplication of the file transfers, I ultimately identified a total of 2,575 unique customer contracts.

5.      My initial review, in coordination with a team of attorneys also assigned to assist with this task, was focused on identifying the extent to which notice and/or consent may be required and the type of information that requires notice and/or consent, if any.

6.      My preliminary review identified, *inter alia*, the following challenges among DISCO's various customer contracts:

a.      Some customers have more than one agreement with DISCO, including where customers have had more than one matter for which they engaged DISCO as a legal vendor, and some have differing terms based on the specific matter and timeframe of the engagement;

b.      Some customers require that notice under the contract be provided to an individual identified in another agreement, such as by cross reference that notice should be provided to a contact specified in the order form for that specific litigation; and

c.      The contracts have varying definitions of protected information but the vast majority I reviewed contemplate the identity of the customer within the defined term and scope of confidentiality that would require (at minimum) a precise form of notice.

7.      While I identified numerous and varying notice and/or consent provisions, two examples from high revenue DISCO customers state as follows:

> **Sample Contract 1**: "DISCO will maintain Customer's data as confidential. DISCO will not disclose any proprietary, confidential … or privilege information to any third party *without the Customer's consent*."

> **Sample Contract 2**: "The provisions of this Clause 8 (Confidentiality) will not restrict a Receiving Party from disclosing the Disclosing Party's Confidential Information to the extent required by Applicable Laws provided that, unless prevented by law, the Receiving Party: (a) uses reasonable efforts to give the other party reasonable advance notice of such required disclosure, and cooperates in good faith with the Disclosing Party's efforts to prevent or limit such disclosure, provided that the Disclosing Party pays any expenses, including legal fees, that the Receiving Party incurs; (b) *agrees to the timing and exact content of such disclosure with*

***the Disclosing Party in advance***; and (c) shall disclose only that portion of the Confidential Information which is legally required to be disclosed (or as otherwise agreed with the Disclosing Party pursuant to Clause 8.3(b)) and will otherwise exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Confidential Information."

8.      Given the significant time to sample select contracts, I worked with our e-discovery team to try to identify a streamlined process for determining the type of information that requires notice and the governing provision for the same.

9.      I reviewed various e-discovery outputs and engaged in multiple turns with randomized sampling of what provisions the e-discovery tool identified to compare them against the underlying contract.

10.     Based on my review, a close one-to-one review of each underlying contract is required to confirm (at minimum) the person to whom notice is required and the method by which notice must be provided.  I have also determined that this will at times require pulling additional agreements, such as order forms, to identify the individual to whom notice must be directed.

11.     Overall, my extensive sampling of customer contracts and review of the provisions that were flagged via our e-discovery tools and my colleagues has led me to determine to the best of my ability that most DISCO customers require some form of notice and then a chance to object and/or consent before customer names can be disclosed.

12.     If the Court orders DISCO to disclose customer names, my assessment indicates that compliance with DISCO's contractual obligations will require a team of attorneys to do a careful review of at least 2,575 customer contracts to identify the controlling provisions, including to whom notice is required.  That attorney team would then need to provide notice, confer with those customers on the process and scope of disclosure, and track consents where required.  Those attorneys would also need to evaluate more than 2,000 documents in the production, which contain

DECLARATION OF A. CORKERY
NO. 1:24-CV-00028-RP

thousands of unique customer names, to disclose only those who have consented to disclosure pursuant to agreement.

13.    Overall, my work to date suggests that, to comply with DISCO's contractual obligations, it would take hundreds of hours and several months to provide notice and/or seek consent.

14.    I am aware that Plaintiff's retained counsel, the Rosen Law Firm, is engaged in multiple litigations against at least one (if not more) of DISCO's clients.    Disclosing that customer's name with information surrounding the volume, revenue, timing, and scope of legal work it had DISCO perform introduces collateral conflict issues that the parties' Stipulated Protective Order cannot address.

I declare under penalty of perjury that the foregoing is true and correct.    Executed on November 21, 2025, in Palo Alto, California.

_____
Ashley K. Corkery