**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LYNN GAMBRILL, Individually and On Behalf of All Others Similarly Situated, Plaintiff,** | § § § | **A-24-CV-28-DAE** |
| **V.** | § § | |
| **CS DISCO, INC.; KIWI CAMARA; MICHAEL LAFAIR, Defendant.** | § § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE:

Before the court is Lead Plaintiff's Agreed Motion and Memorandum of Law in Support of Motion for Preliminary Approval of Settlement (Dkt. 126).[1] Defendants do not oppose the motion. Dkt. 126 at 30. Having considered the motion, pleadings, and applicable law, and arguments made at the hearing, the undersigned submits the following recommendations to the District Judge.

## I. BACKGROUND

This action was initially styled as *Gambrill v. CS Disco, Inc., et al.*, Case No. 1:24-cv-08270-LAK (S.D.N.Y.). After briefing on several lead plaintiff motions, including providing the court supplemental information, on December 14, 2023, Pluymen was appointed Lead Plaintiff and his selection of The Rosen Law Firm, P.A. ("Rosen Law") was approved as Lead Counsel.

[1] The motion was referred by Senior United States District Judge David A. Ezra to the undersigned pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Text Order dated July 10, 2026. Because the motion requires preliminary approval of a settlement class, the undersigned understands the referral to be for a report and recommendation. *See* 28 U.S.C. § 636(b).

In January 2024, this action was transferred to this Court. On March 8, 2024, Lead Plaintiff filed the Amended Class Action Complaint. Dkt. 53 ("Compl.").

This case concerns a securities class action lawsuit brought against CS Disco and CS Disco's former Chief Executive Officer ("CEO") Kiwi Camara, and current Chief Financial Officer ("CFO") Michael LaFair ("Individual Defendants"). Compl. Lead Plaintiff alleges securities fraud claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Amd. Compl. ¶¶ 101–10. Plaintiff also brings claims for control person liability against the Individual Defendants under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Amd. Compl. ¶¶ 111–16.

On August 4, 2025, Lead Plaintiff filed an opposed motion to certify a class. On December 4, 2025, the undersigned held a hearing on the class certification motion, and on December 16, 2025, submitted his report and recommendation to District Judge Ezra, recommending that the motion be denied. Dkt. 114 (the "R&R"). The undersigned found Rule 23(a)'s numerosity, typicality, and adequacy requirements were satisfied. Additionally, the undersigned found damages could be determined on a class-wide basis, a class action was superior to other available methods for adjudicating the controversy, and a class could be adequately defined and was clearly ascertainable. However, the undersigned found that—given the nature of the alleged misrepresentations—Lead Plaintiff was not entitled to a presumption that would allow reliance to be decided on a class-wide basis. Without that presumption, individual issues of reliance would dominate class issues as to liability. Accordingly, although all other factors supported certification, the undersigned recommended against certifying the class under Rule 23(b)(3). The report and recommendation remains pending before the District Judge.

Nonetheless, the parties engaged in two mediation sessions with David Murphy of Phillips ADR. Eventually, Mr. Murphy issued a mediator's proposal that the parties accepted to settle this action for $11,500,000, in exchange for a full release of all released claims against Defendants' releasees. Ten days after the undersigned submitted his report and recommendation, the parties moved to stay the case to finalize settlement details. Dkts. 116, 117. After negotiations, the parties executed a Term Sheet on January 28, 2026.

Lead Plaintiff now requests this Court conditionally certify the proposed Settlement Class for purposes of the settlement as it satisfies the criteria of Rules 23(a) and 23(b)(3). Lead Plaintiff further requests that this Court approve the proposed form and manner of notice.

Lead Plaintiff also requests that the Court preliminarily approve the settlement as it provides a substantial and beneficial result for the Settlement Class. Lead Plaintiff asserts the settlement is particularly impressive and beneficial for CS Disco shareholders in light of the undersigned's recommendation to deny class certification. Defendants do not oppose the motion.

Accordingly, the undersigned first examines whether a class should be certified for settlement purposes and then turns to whether the settlement is in the class's best interest.

## III. Whether a Proposed Settlement Class Should Be Certified

This Court must first determine whether the proposed settlement may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997); *see, e.g., Poff v. PHH Mortgage Corp.,* 2023 WL 11983790, at *4 (S.D. Tex. Apr. 18, 2023) (preliminarily approving settlement and conditionally certifying class for settlement purposes). Rule 23(a) sets forth four prerequisites to class certification, specifically: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. Additionally,

to certify a settlement class, it must also meet one of the three requirements of Rule 23(b). *See* FED. R. CIV. P. 23.

In addition to the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The undersigned previously found that all considerations favored class certification, except Rule 23(b)'s predominance requirement. The undersigned stands by his earlier recommendation, but reexamines the predominance requirement in the context of a class-wide settlement.

"It is altogether proper and consistent for a court to certify a class for settlement purposes, while it might have had more difficulty reaching this determination in a different context." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 178 (5th Cir. 1979). Classes for settlement purposes and for litigation purposes are evaluated differently. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial."); *In re Deepwater Horizon*, 739 F.3d 790, 818 (5th Cir. 2014) ("question of law or fact that is 'common' under Rule 23 is one that enables the class action 'to generate common answers apt to drive the resolution of the litigation.' But after a class action has been settled, by definition the litigation has been resolved and the questions have been answered."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 280 (W.D. Tex. 2007) ("[T]he United States Court of Appeals for the Fifth Circuit has indicated a class may be certified for settlement purposes when doubt exists as to certification for litigation[.]").

For settlement purposes, this case satisfies the predominance and superiority criteria. *See KB Partners,* 2013 WL 2443217, at *13 (W.D. Tex. June 4, 2013). Because liability is no longer at issue, common questions arising from Defendants' Settlement Class Period statements will control the outcome of the action and, as such, satisfy Rule 23(b)(3)'s predominance requirement. *See Prause v. TechnipFMC, PLC,* 2020 WL 3549686, at *7 (S.D. Tex. Mar. 9, 2020) (finding that common questions predominated when "each class member acquired [Defendants] shares during the Class Period based on… statement[s] containing nearly identical misstatements").

Accordingly, all of the requirements of Rule 23(a) and (b) are satisfied. There are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes and appointing Lead Plaintiff as the class representative. Defendants do not oppose class certification for this purpose.

## IV. Whether the Settlement Benefits the Class

### A. Factors to Consider in the Preliminary Approval of a Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of a class action. Preliminary approval of a proposed settlement is part of a two-step process in the approval of a class action settlement, whereby (1) the Court evaluates the fairness of the settlement and (2) directs that notice be given to the class members of a formal hearing. *Epperson v. Int'l Paper Co*., 2024 WL 3746390, at *3 (W.D. La. Aug. 9, 2024) (citing *McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002)).

Pursuant to Rule 23(e)(1), this approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." To determine whether a settlement is fair, reasonable, and adequate courts consider:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

> appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). As these factors overlap, rather than replace the factors laid out in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983),[2] "courts in this circuit often combine them in analyzing class settlements." *C.C. & L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *2 (E.D. Tex. Sept. 26, 2022) (quoting *ODonnell v. Harris Cnty., Texas*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019)).

The approval of a proposed settlement is within the discretion of the district court, and district courts are granted considerable leeway in making this determination. *See Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012) ("An abuse of discretion occurs only when all reasonable persons would reject the view of the district court."). This discretion should be exercised in the context of public policy that strongly favors the pretrial settlement of class action lawsuits. *See Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("[settlements] will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits"); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (particularly with respect to class action settlements, "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex").

The Court is, furthermore, not required to make a final determination as to the merits of the proposed settlement with its preliminary approval analysis. *McNamara*, 214 F.R.D. at 427

---

[2] The *Reed* factors are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172.

("purpose of the preliminary approval is to detect any *obvious* defects that will preclude final approval of the settlement"); *In re OCA, Inc. Sec. & Derivative Litig.,* 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008); *Bardales v. Fontana & Fontana, LLC,* 2020 WL 5819873, at *9 (E.D. La. Sept. 30, 2020). Rather, full evaluation is reserved until the final approval stage, after notice of the settlement has been disseminated and class members have had an opportunity both to voice their views of the settlement and to exclude themselves from the settlement. For the reasons set forth below, the undersigned finds the proposed settlement should be preliminarily approved.

**B. The Proposed Settlement is Fair, Reasonable, and Adequate**

1. Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class[3]

Courts must consider whether the "class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). Lead Plaintiff and Lead Counsel have diligently prosecuted the action and have adequately represented the Settlement Class. The undersigned already noted this in the R&R stating, that "[t]he court is satisfied that the named Plaintiff will adequately represent the class members' interest….The court is satisfied Plaintiff's counsel can adequately represent the class. Counsel has already competently asserted and defended Plaintiff's claims. Counsel is experienced in handling class actions and the types of claims asserted in this case." R&R at 7.

Lead Plaintiff and Lead Counsel conducted a comprehensive investigation of CS Disco, including: retaining a private investigator; reviewing CS Disco's public filings and news reports concerning the Company; and retaining an expert to assess damages. Further, Lead Plaintiff and Lead Counsel drafted the Complaint and successfully opposed in part Defendants' Motion to Dismiss as well as Defendants' Motion for Reconsideration. At the time of the settlement, Lead

[3] FED. R. CIV. P. 23(e)(2)(A).

Plaintiff and Lead Counsel were in the midst of discovery, including filing and opposing motions to compel and producing and reviewing documents. As a result, Lead Counsel had an in-depth factual and legal understanding of the strengths and weakness of Lead Plaintiff's claims by the time settlement discussions began and adequately represented the Settlement Class in a rigorous negotiation process with experienced defense counsel.

Despite the R&R recommending the denial of class certification, Lead Plaintiff and Lead Counsel were able to negotiate a settlement that provides immediate recovery to Settlement Class Members. Thus, the settlement is the product of diligent and adequate prosecution of this case.

2. The Settlement Resulted From Arm's-Length Negotiations[4]

"Courts may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations." *Welsh v. Navy Fed. Credit Union*,, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018); *see also, Faircloth v. Certified Fin. Inc.*, 2001 WL 527489 (E.D. La. May 16, 2001). Moreover, courts generally will assume the negotiations were proper if the terms of the proposed settlement are fair. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981); *Lane v. Campus Fed. Credit Union*, 2017 WL 3719976, at *7 (M.D. La. May 16, 2017).

As set forth above, the parties' settlement negotiations were at arm's-length, extended, and adversarial. The parties participated in extensive negotiations including with two full-day mediation sessions with an experienced mediator. "The involvement of 'an experienced and well-known' mediator is also a strong indicator of procedural fairness." *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) (citations omitted) (cleaned up). Further, multiple mediation sessions supports the arm's-length nature of negotiations. *See In re F45 Training*

[4] FED. R. CIV. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172.

*Holdings, Inc. Sec. Litig.*, 2026 WL 1045753, at *6 (W.D. Tex. Apr. 16, 2026). Under these circumstances—the rigorous negotiation process combined with the substantial investigation completed by Lead Counsel—the settlement is the product of good faith, mediated, arm's-length negotiation between the parties.

3. The Relief is Adequate in Light of the Duration, Costs, and Risks of Litigation[5]

Lead Plaintiff's claims involve numerous complex legal issues. While Lead Plaintiff believes that the action has merit, Defendants have significant defenses to both liability and damages with regard to the allegedly false and misleading statements, whether the statements were made with scienter, and loss causation. Although the Court denied Defendants' motion to dismiss in part and later denied Defendants' motion for reconsideration, the undersigned recommended that the class certification motion be denied. If the District Judge adopted the report and recommendation, the claims would not proceed as a class action, wiping out any realistic recovery for CS Disco investors. And if the District Judge did not adopt the R&R, it was likely that Defendants would file a Rule 23(f) petition to seek leave to immediately appeal the ruling. And should Defendants have been unsuccessful, they would still have had the opportunity to move for decertification before trial.[6]

Even if Lead Plaintiff was able to obtain class certification, there is no guarantee what would happen as discovery continued or at summary judgment or at trial. The costs and risks associated with litigating the Action to a verdict, not to mention through the inevitable appeal, would be high. Finally, if taken to trial, the action would easily require an additional one to two

[5] FED. R. CIV. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

[6] *See* FED. R. CIV. P. 23(c)(1)(C); *McNamara v. Felderhof*, 410 F.3d 277, 280 n.8 (5th Cir. 2005) (citing *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("Moreover, a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.")). *Reyes v. Julia Place Condo. Homeowners Ass'n, Inc*., 2017 WL 430056, at *2 (E.D. La. Jan. 31, 2017), *aff'd sub nom. Reyes v. Steeg L., L.L.C.*, 760 F. App'x 285 (5th Cir. 2019).

years before a recovery, if any, was obtained for the Settlement Class. *Burford v. Cargill, Inc.*, 2012 WL 5472118, at *4 (W.D. La. Nov. 8, 2012) ("Continued litigation in this matter would be lengthy, complex, and expensive."). The Settlement is, therefore, adequate in light of the potential expenses faced from continued litigation. *C.C. & L.C. v. Baylor Scott & White Health,* 2022 WL 4477316, at *3 (E.D. Tex. Sept. 26, 2022) ("[T]he prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.").

4. The Proceedings are Adequately Advanced[7]

The primary purpose of examining the stage of the proceeding is ensuring that both sides adequately understand the case when negotiations begin. *In re Train Derailment Near Amite Louisiana*, 2006 WL 1561470, at *22 (E.D. La. May 24, 2006) ("In assessing the fairness, reasonableness and adequacy of a proposed class action settlement, a district court must determine whether the parties are in a position to assess their respective cases and to make reasonable decisions with respect to settlement, considering the information to which they are privy and the stage of the proceedings when the tentative deal is struck."); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 148 (E.D. La. 2013) ("[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed.").

Lead Plaintiff thoroughly investigated his claims, including reviewing all publicly available documents relating to Defendants' purported misstatements, examining related analyst reports, and interviewing potential witnesses. Once the Private Securities Litigation Reform Act

[7] *Reed*, 703 F.2d at 172.

of 1995 ("PSLRA") discovery stay was lifted, the Parties engaged in meaningful discovery including document production and written discovery (including initial disclosures and interrogatories). Discovery was hard-fought with both sides filing motions to compel. Utilizing the information gleaned from investigation and review of discovery, Lead Plaintiff had a fulsome understanding of the merits of the case.

5. The Settlement is Fair in Light of the Probability of Success on the Merits[8]

While Lead Plaintiff maintains he was prepared to litigate through trial and beyond, he was well aware of the risks to continued litigation. Although the Court ruled in favor of Lead Plaintiff on the motion to dismiss in part, alleging the elements of a claim and proving them are not the same. There is a risk that Lead Plaintiff will be unable to establish the required element of material misstatement. And proving that Defendants acted with requisite scienter faces similar risks. Developing evidence to prove scienter for trial is a difficult task. Further, if the District Judge adopted the R&R, then it would eliminate the ability to proceed on a class wide basis.

In light of these substantial risks, the settlement provides meaningful benefits to the Settlement Class and is consistent with the public interest, as it is well settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391 (5th Cir. 1984).

6. The Range of Possible Recovery[9]

To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if [a] case goes to trial." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982). "The typical recovery in most class actions generally is three-to-six cents on the dollar." *City of Omaha Police & Fire Ret. Sys. v. LHC*

[8] FED. R. CIV. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.
[9] FED. R. CIV. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

*Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *7 (W.D. La. Mar. 3, 2015). Moreover, according to NERA, an economic consulting firm, between 2015 and 2024, securities class actions alleging damages of $200 million to $399 million settled for a median of 2.7% of damages. (Stern Decl., Ex. 2 at Fig. 23). And in 2025, NERA found that the median recovery for securities settlements was 1.5%. Id., at Fig. 24. Further, according to Cornerstone Research, the median recovery in cases alleging Rule 10b-5 claims with estimated damages between $150 million and $249 million was approximately 4.9% of estimated damages in 2025, and 6.9% between 2016-2024. (Stern Decl., Ex. 3 at Fig. 8).

Under the proposed settlement, the Settlement Class will receive $11,500,000—an adequate and reasonable amount—in exchange for the release of all claims against Defendants. Here, the $11,500,000 Settlement Amont warrants preliminary approval. The settlement recovers approximately 4.66% of the maximum estimated, maximum class-wide damages to be approximately $246.9 million using a multi-trader model under Plaintiffs' best-case-scenario, as estimated by Plaintiffs' damages expert. This best-case-scenario assumes that: (i) the Court certifies the same class period as the Settlement Class Period; and (ii) the Court and jury accept Plaintiffs' damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages. The percentage of maximum damages recovered here therefore evinces a highly favorable result for the class, well within the range of securities class action settlements with similar total damages

7. <u>The Opinions of Lead Counsel and Lead Plaintiff</u>[10]

"Class Counsel are intimately familiar with the case and the Settlement and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *In re*

[10] *Reed*, 703 F.2d at 172.

*Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 489 (E.D. La. 2020); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (internal quotations omitted); *Melby v. Am.'s MHT, Inc.*, 2018 WL 10399004, at *10 (N.D. Tex. June 22, 2018) ("[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding, and class counsel is experienced in class action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'") (citing *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005)). Here, Lead Counsel have considerable experience in complex class action litigation and securities law and approve of the settlement. Further, Lead Plaintiff is a well-respected attorney and mediator who was actively involved in each step of the action. He too evaluated the action and agreed to the proposed Settlement.[11]

8. The Proposed Settlement is Designed to Treat Settlement Class Members Equally[12]

The Court must ultimately assess the settlement's effectiveness in equitably distributing relief to members of the Settlement Class. *See* FED. R. CIV. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. *See* FED. R. CIV. P. 23(e)(2)(D). Courts routinely approve similar distribution methods. *See e.g., F45 Training*, 2026 WL 1045753, at *6. The Plan of Allocation, set out in the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation was designed, with the help of a damages expert, to distribute the Settlement Fund consistent with the claims alleged in this case. The Plan of Allocation does

[11] Settlement Class Members have not yet had the chance to review the Settlement's terms. Therefore, Lead Counsel will advise the Court of the reaction to the Settlement following completion of the notice process in connection with seeking final approval of the Settlement.
[12] FED. R. CIV. P. 23(e)(2)(D).

not compensate losses resulting from "in and out" transactions, i.e., losses from sales made prior to the revelation of the alleged truth. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Further, each claimant's loss is calculated based on the number of shares purchased or otherwise acquired during the Settlement Class Period and each loss is divided by the total losses of all Authorized Claimants, multiplied by the total amount of the Net Settlement Fund.

9. The Anticipated Request for Attorneys' Fees is Reasonable[13]

The proposed notices to the Settlement Class advise that Lead Counsel will apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund and interest, plus payment of expenses with interest. In light of Lead Counsel's efforts without any payment whatsoever, a fee of up to one-third is reasonable and falls within the range of attorneys' fees regularly awarded in this Circuit. *See, e.g., Al's Pals Pet Care*, 2019 WL 387409, at *4 (S.D. Tex. 2019) (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022) (finding that one-third of the settlement is "squarely in the accepted range"); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *7 (N.D. Tex. Apr. 25, 2018) (granting one-third fee). Settlement Class Members will have an opportunity to address the fee request before the Settlement Fairness Hearing, and after Lead Counsel have made submissions in support of their request.

[13] FED. R. CIV. P. 23(e)(2)(C)(iii).

In light of the foregoing analysis, the undersigned finds the settlement falls within the range of what could be found to be fair, reasonable and adequate and warrants this Court's preliminary approval.

10. <u>Other Agreements</u>[14]

The Parties entered into a standard Supplemental Agreement that provides CS Disco with the option to terminate the settlement if the number of Settlement Class Members requesting exclusion from the Settlement Class exceeds a certain threshold. Stipulation III(C)(f)(2.11). To protect the Settlement Class, the precise terms of the Supplemental Agreement are kept confidential to avoid creating incentives for a small group of Settlement Class Members to opt out solely to leverage larger individual settlements for themselves to the detriment of the rest of the Settlement Class. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *Jiangchen v. Rentech, Inc.,* 2019 WL 13570065, at *12 (C.D. Cal. June 24, 2019) ("This type of agreement is common in securities fraud actions and does not weigh against preliminary approval.").

## V. WHETHER THE PROPOSED NOTICE SATISFIES RULE 23

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

---

[14] FED. R. CIV. P. 23(e)(3)(C)(iv).

Additionally, the PSLRA imposes its own requirements for notice. To conform with the PSLRA, the notice must state: (i) the amount of the Settlement proposed to be distributed to the parties as determined in the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs, and the amount that will be sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice; (v) a brief statement explaining why the parties are proposing the settlement; and (vi) such other information as may be required by the Court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

As detailed in the proposed preliminary approval order, Lead Counsel and the Claims Administrator[15] propose to: (i) email the Summary Notice of Pendency and Settlement of Class Action ("Summary Notice") and links to the location of the electronic Long Notice and Claim Form to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses with reasonable effort; or (ii) if no email address can be obtained, cause the Postcard Notice to be mailed to Settlement Class Members for whom the Claims Administrator can identify with reasonable effort. The Claims Administrator will also cause important documents to be posted on a settlement-specific website. Additionally, the Claims Administrator will cause the Summary Notice to be to be disseminated electronically over a newswire.

[15] Lead Plaintiff respectfully requests that Strategic Claims Services ("SCS") be appointed as Claims Administrator. SCS has significant experience administrating similar settlements and is routinely approved in this role. *See e.g., F45 Training*, 2026 WL 1045753, at *6 (appointing SCS).

The proposed notice program fulfills the requirements of due process because it alerts and informs those members of the Settlement Class who can be identified through reasonable efforts of the information set forth above. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (a notice that "adequately described" the action and the terms of the proposed settlement, and informed "shareholders that additional information was available" "did not violate . . . due process rights"). Further, the Summary Notice provides an abbreviated but informative description of the action and the proposed settlement, and also explains how to obtain the more detailed Notice. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See, e.g.*, *F45 Training*, 2026 WL 1045753, at *6; *Delaware Cty. Employees Retirement Sys. v. Cabot Oil & Gas Corp.*, Case No. 4:21-CV-02045, Dkt. No. 211 (S.D. Tex. Jun. 27, 2024); *In re Enron Sec. & ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003).

## VI. PROPOSED SCHEDULE

As suggested by Lead Plaintiff, the undersigned recommends the following schedule as set forth in the proposed preliminary approval order:

| **Event** | **Deadline for Compliance** |
|---|---|
| Settlement Fairness Hearing | At least 125 days following the entry of the Preliminary Approval Order (¶6). |
| Posting the Stipulation, Preliminary Approval Order, Long Notice, Postcard Notice, and Claim Form on the Settlement website | Within 14 calendar days after the entry of the Preliminary Approval Order (¶15). |
| Publication of Summary Notice. | Within 14 calendar days after the entry of the Preliminary Approval Order (¶16). |
| Emailing the Summary Notice/Mailing the Postcard Notice | Within 14 calendar days after the entry of the Preliminary Approval Order (¶17). |
| Deadline for submitting Claim Forms and for Requests for Exclusion | No later than 75 days after the Notice Date (¶¶22(a), 24). |
| Filing of papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense request | No later than 35 calendar days before the Settlement Fairness Hearing (¶33). |
| Deadline to file objections to Settlement, Plan of Allocation, and/or Fee and Expense Application | No later than 21 calendar days before the Settlement Fairness Hearing (¶30). |

| Event | Deadline for Compliance |
| --- | --- |
| Deadline to file response to any objections or reply papers in further support of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense request. | No later than 7 calendar days before the Settlement Fairness Hearing (¶34). |

## VII. CONCLUSION

Accordingly, the undersigned recommends the District Judge: (i) preliminarily certify the Settlement Class for purposes of the Settlement; (ii) preliminarily approve the Settlement; (iii) approve the form and manner of Notice; and (iv) set a Settlement Fairness Hearing.

## IV. RECOMMENDATION

For the reasons stated above, the court **RECOMMENDS** Lead Plaintiff's Agreed Motion and Memorandum of Law in Support of Motion for Preliminary Approval of Settlement (Dkt. 126) be **GRANTED** and the District Judge enter Lead Plaintiff's Proposed Order Preliminarily Approving Class Action Settlement and Providing for Notice (Dkt. 126-1).

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED October 7, 2026.

MARK LANE
UNITED STATES MAGISTRATE JUDGE